UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael Lee SAMMONS,
Defendant–Appellant.

No. 88–6311.

United States Court of Appeals,
Sixth Circuit.

Decided Nov. 5, 1990.

Rehearing Denied Dec. 17, 1990.

John W. Gill, Jr., U.S. Atty., James R. Dedrick, Asst. U.S. Atty., Knoxville, Tenn., Steven H. Cook, Asst. U.S. Atty. (argued), Chattanooga, Tenn., for plaintiff-appellee.

Tim S. Moore (argued), Newport, Tenn., Michael Lee Sammons, Jesup, Ga., for defendant-appellant.

Before KEITH and GUY, Circuit Judges; and LIVELY, Senior Circuit Judge.

RALPH B. GUY, Jr., Circuit Judge.

The defendant, Michael Sammons, appeals his conviction and 22-year sentence for violation of the Travel Act, 18 U.S.C. § 1952(a)(3),[1] possession of marijuana with intent to distribute; 21 U.S.C. § 841,[2] importation of marijuana; 21 U.S.C. § 952(a),[3] and conspiracy to import and distribute marijuana, 21 U.S.C. §§ 846 and 963.[4] Sammons has submitted numerous allegations of error on appeal, including, *inter alia*: (1) deprivation of his right to trial by jury through an unknowing and uninformed waiver; (2) violation of his fifth amendment right to due process and sixth amendment right to counsel through the unlawful seizure and sequestration of funds; (3) deprivation of due process by the trial judge's refusal to recuse himself, *see* 28 U.S.C. §§ 144, 455(a); (4) selective and vindictive prosecution; (5) participation of the sentencing judge in plea negotiations in violation of Fed.R.Crim.P. 11(e)(1); (6) deprivation of due process and the sixth amendment right to counsel by the government's failure to provide access to a law library or advisory counsel; (7) deprivation of due process through the government's withholding of the addresses of witnesses; (8) deprivation of due process by the trial court's reliance on invalid prior convictions in sentencing, *see United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); (9) violation of the double jeopardy clause in sentencing; and (10) excessive sentencing. Upon careful consideration of each issue presented, we find no error meriting remand, and, accordingly, affirm the conviction and sentence.

1. 18 U.S.C. § 1952(a) provides:
   (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—
   (1) distribute the proceeds of any unlawful activity; or
   (2) commit any crime of violence to further any unlawful activity; or
   (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
   and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

2. 21 U.S.C. § 841(a)(1) provides:
   (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....

3. 21 U.S.C. § 952(a) provides:
   It shall be unlawful to import into the customs territory of the United States from any place outside thereof ... any controlled substance in schedule I or II of subchapter I of this chapter, or any narcotic drug in schedule III, IV, or V of subchapter I of this chapter....

4. At the time of the indictment, 21 U.S.C. § 846 provided as follows:
   Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense....

## I.

### Factual Background

In September of 1986, after serving approximately two years of a three-year sentence for violation of various federal narcotics trafficking laws,[5] Sammons was transferred from prison to a halfway house in Chattanooga, Tennessee. The evidence produced at trial reveals that from the time of his release until at least July of 1987 the defendant engineered and executed a scheme to import marijuana into the United States involving several accomplices, two trips across the Mexican border, and the smuggling of at least 42 pounds of the drug into the country. In August of 1987, a federal grand jury sitting in Chattanooga, Tennessee, returned a five-count indictment against Sammons, at which point he chose to flee rather than face trial.

Sammons was finally apprehended in September of 1988 and brought before the United States District Court for the Eastern District of Tennessee for arraignment. Although fully informed of his right to appointed counsel, Sammons, whose dealings with the courts have been extensive,[6] elected to represent himself. Sammons does not contest the fact that the court repeatedly emphasized the gravity of his decision to proceed without legal representation, and that these admonitions made him sufficiently aware of the "dangers and disadvantages of self-representation," *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975), to satisfy the requirements for a valid waiver of counsel set out in *United States v. McDowell*, 814 F.2d 245 (6th Cir.1987).

On July 12, Sammons requested appointed counsel for the limited purpose of engaging in plea negotiations. The request was granted, but negotiations proved fruitless. On September 1, the defendant signed a Rule 23 waiver of jury trial and the case was thereupon tried to the court. After presiding over the two-day trial, Judge Allan Edgar entered a memorandum opinion and order thoroughly addressing the facts on record and finding Sammons guilty on all counts. The case was then referred to the United States Probation and Parole Office for preparation of a presentence report. Upon consideration of the presentence report and a special drug offender notice, Judge Edgar sentenced Sammons to a 22-year term of imprisonment to be followed by a five-year special parole term. Sammons thereupon filed this appeal.

## II.

### Right to a Jury Trial

In his first claim of error, Sammons maintains that his waiver of trial by jury was not knowing and intelligent, and that his conviction must therefore be vacated and a new trial ordered. Upon examination of the facts on the record, we find nothing to support this contention.

On September 1, the court held an evidentiary hearing on the defendant's motion to dismiss on the basis of vindictive prosecution. Toward the end of that hearing, defendant's appointed standby counsel requested a ten-minute recess in order to consult with the defendant about a matter that could "have a substantial impact on the proceedings." The request was granted. Upon return from the conference, Sammons informed the court that he wished to "make an oral motion for a bench trial as opposed to a jury trial." The court asked the government whether it had any

---

**5.** In May of 1984, two indictments issued from the Eastern District of Tennessee and one from the Southern District of Texas in which Sammons was charged with exporting firearms and importing marijuana. In June 1984, the case was transferred to the Southern District of Texas pursuant to Fed.R.Crim.P. 20 for guilty pleas to be entered to all three counts. In August of 1984, the defendant pleaded guilty in the United States District Court for the Southern District of Texas, Docket No. B-84-296, to fourteen counts in three indictments involving exporting seven pistols without a license, ten pounds of marijua-

na, and 5.6 pounds of hashish oil. He received 14 concurrent three-year sentences.

**6.** For a partial list of the litigation which Sammons has directed, *see, e.g., United States v. Sammons*, 826 F.2d 1065 (6th Cir.1987) (unpublished); *Sammons v. Rogers*, 785 F.2d 1343 (5th Cir.1986); *Sammons v. Cody*, 782 F.2d 1043 (6th Cir.1985) (unpublished) (affirming a district court decision that Sammons' successive habeas corpus petitions constituted an abuse of the writ); *Sammons v. Rotroff*, 779 F.2d 52 (6th Cir.1985) (unpublished).

objections. After a 15–minute recess, the Assistant United States Attorney stated he had none, and the court indicated that the trial would be to the bench.[7] At the conclusion of the evidentiary hearing, the defendant signed the following written statement: "I have requested that this case be tried by the United States District Judge and, therefore, pursuant to Rule 23(a) of the Federal Rules of Criminal Procedure, waive a jury trial."[8]

In support of his contention that this waiver was not knowingly and intelligently made, Sammons notes that the district judge never informed him of the essential attributes of a jury trial, the fact that the right to such a trial is guaranteed by the Constitution, or the advantages of a jury trial over a bench trial. Sammons places particular emphasis on the fact that the district judge did not apprise him of the impact of the rules of evidence on the relative merits of a bench and a jury trial, and particularly of the fact that the judge, who had presided over previous criminal proceedings involving Sammons, would have knowledge of his prior convictions and unlawful activity of which a jury would not have.[9] Finally, Sammons points out the fact that Judge Edgar had knowledge of an earlier "Motion for Rearraignment" in which Sammons had requested permission to change his not guilty pleas to guilty.[10]

■■■ We stated in *United States v. Martin,* 704 F.2d 267 (6th Cir.1983), that:

> Criminal defendants may waive their right to trial by jury only if four conditions are met. First, the waiver must be in writing. Second, the government attorney must consent to the waiver. Third, the trial court must approve the waiver. Fourth, the defendant's waiver must be voluntary, knowing and intelligent.

*Id.* at 271; *see also United States ex rel. McCann v. Adams,* 320 U.S. 220, 64 S.Ct. 14, 88 L.Ed. 4 (1943); *Patton v. United States,* 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930); *United States ex rel. Wardick v. Chrans,* 869 F.2d 1084 (7th Cir.1989); *United States v. Anderson,* 704 F.2d 117 (3d Cir.1983). Interpreting the "knowing and intelligent" requirement in *Martin,* we held that a "technical knowledge of the jury trial right" is not required for a waiver to be effective. We explained that:

---

**7.** The discussion proceeded as follows:

> MR. SAMMONS: Your Honor, at this time I'd like to make an oral motion for a bench trial as opposed to a jury trial.
> THE COURT: Well, what does the Government say to that?
> MR. COOK: Certainly, no objection to that, Your Honor. Actually, I think I'd like to have about twenty minutes if I could to—let me explain.
> MR. PHILLIPS: To recuperate.
> MR. COOK: Could I have twenty minutes, seriously, to respond?
> THE COURT: Sure. Sure. How about fifteen?
> MR. COOK: All right. I can do it.
> THE COURT: Okay. We'll be in recess for fifteen more minutes.
> (Short recess.)
> THE COURT: All right. Mr. Cook, what is your response?
> MR. COOK: Your Honor, I would respond by having no objection to the Defendant's motion. But would ask the Court to realize that we had enough witnesses to go very safely through three-quarters of the day, and some of my witnesses aren't scheduled to be here until Tuesday, of course.
> THE COURT: We'll make some adjustments for that. If we can't, I understand.

**8.** The district judge and the Assistant United States Attorney also signed the waiver form indicating their consent.

**9.** Sammons did not testify on his own behalf at trial.

**10.** The defendant's "Motion for Rearraignment" provided, in pertinent part, as follows:

> Comes the defendant and moves for rearraignment for the purpose of changing his "not guilty" pleas to *"GUILTY ON ALL COUNTS"* for sentencing pursuant to 18 USC 3553, 4205(b)(2) in the interests of justice and judicial economy.

The court provided the following explanation for its denial of the motion:

> The purpose of the motion is unclear. If the defendant wishes to plead "guilty" at the opening of trial in the expectation of being sentenced under guidelines prior to the Sentencing Reform Act of 1984, the Court will be happy to oblige. The Court does not find it necessary, however, to rearraign the defendant since he can change his plea at the opening of trial if he so desires. The motion is DENIED.

A defendant is sufficiently informed to make an intelligent waiver if he was aware that a jury is composed of 12 members of the community, he may participate in the selection of the jurors, the verdict of the jury must be unanimous, and that a judge alone will decide guilt or innocence should he waive his jury trial. Knowledge of these essential attributes is generally sufficient to enable a defendant to make a knowing and intelligent decision.

*Martin,* 704 F.2d at 273 (citation omitted).[11] The statement that this knowledge is *sufficient* is not, of course, equivalent to a statement that it is constitutionally required. In fact, the Seventh Circuit has held that a defendant who "understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge" had knowingly and intelligently waived his right to trial by jury. *United States ex rel. Williams v. DeRobertis,* 715 F.2d 1174, 1180 (7th Cir. 1983), *cert. denied,* 464 U.S. 1072, 104 S.Ct. 982, 79 L.Ed.2d 219 (1984). Nevertheless, because of the importance of the right to a jury trial, the Seventh Circuit has elected to exercise its supervisory powers over the district courts by requiring that they explain to criminal defendants the following attributes of a jury trial:

(1) that a jury is composed of twelve members of the community, (2) that the defendant may participate in the selection of jurors, (3) that the verdict of the jury must be unanimous, and (4) that if the defendant waives a jury trial, the judge alone will determine guilt or innocence.

*DeRobertis,* 715 F.2d at 1178; *see United States v. Delgado,* 635 F.2d 889 (7th Cir. 1981), and *United States v. Scott,* 583 F.2d 362 (7th Cir.1978). In *Martin,* we specifically declined to join the Seventh Circuit in exercising our supervisory powers on this issue. We explained that "[w]e are confident that such a rule will be unnecessary

since district courts will take a few moments and inform defendants of their jury trial right *on the record.* These few minutes will avoid the troublesome, time consuming task" confronting courts of appeals addressing the issue without the benefit of a fully developed record. *Martin,* 704 F.2d at 275 (emphasis in original). Other circuits have joined us in this request. *See United States v. Cochran,* 770 F.2d 850, 852 (9th Cir.1985) (listing cases). While the district court failed to conduct the suggested colloquy in this action, the record does not disclose any evidence that Sammons was so unaware of the rudimentary elements of trial by jury that his waiver cannot stand. Compliance with the writing requirement set out in Federal Rule of Crimiminal Procedure 23(a) "creates a presumption that the waiver is a voluntary, knowing and intelligent one," *Cochran,* 770 F.2d at 851, and on the facts now before us we can "do no more than hold that the unsupplemented record does not disclose a basis for reversal." *Id.* at 851–52 n. 1. Sammons invites us to consider facts outside the record by including an affidavit with his brief on appeal. We agree with the Ninth Circuit that "facts outside the record may be introduced to show that the waiver was not made voluntarily, knowingly, or intelligently but that the proper vehicle for doing so is a habeas corpus proceeding." *Id.* at 852 n. 1. Accordingly, if Sammons wishes to pursue his argument that his waiver was not knowingly or intelligently made, he should do so through filing a petition under 28 U.S.C. § 2255. *See United States v. Goodwin,* 446 F.2d 894, 895 (9th Cir.1971); *United States v. Reyes–Meza de Polanco,* 422 F.2d 1304, 1305 (9th Cir.) (per curiam), *cert. denied,* 397 U.S. 1081, 90 S.Ct. 1536, 25 L.Ed.2d 817 (1970). The circumstances surrounding the waiver of a jury trial and what knowledge a defendant does or does not possess are best resolved initially in the district court where a hearing can be held if necessary.

---

**11.** There is also no doubt that one "can effect a constitutionally valid waiver of a jury trial even if he is not represented by counsel." *United* *States ex rel. Williams v. DeRobertis,* 715 F.2d 1174, 1182 (7th Cir.1983), *cert. denied,* 464 U.S. 1072, 104 S.Ct. 982, 79 L.Ed.2d 219 (1984).

## III.

### Right to Counsel of Choice

■ Sammons next argues that the government deprived him of his sixth amendment right to retain counsel of his choosing by refusing to return assets seized at the time of his arrest. During an inventory search of the car Sammons was driving at the time he was apprehended, the FBI uncovered approximately $9,020 in cash. Sammons filed a "Motion for the Return of Property" on June 27, 1988, claiming that the funds were being held unlawfully and that they were needed to pay legal expenses. The court denied the motion, holding that "the defendant has noted only conclusory allegations that the seizures of the subject property were illegal, failing to allege specific facts in support of his claims of unlawful search and seizure."

On August 18, 1988, less than two weeks before trial, the government advised Sammons that the money had been seized pursuant to 21 U.S.C. § 881 and that he had a right to make a timely claim for its return. Because Sammons failed to make such a claim, the funds were forfeited to the government.

The statute under which the $9,020 was forfeited contains a "relation back" provision which reads as follows:

> All right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section.

21 U.S.C. § 881(h) (1990 Supp.).[12] There is now no doubt as to the validity of this provision. *See Caplin & Drysdale, Chartered v. United States,* —— U.S. ——, 109 S.Ct. 2646, 2652, 105 L.Ed.2d 528 (1989). Accordingly, Sammons had no lawful right to the $9,020 at any time during the course of the proceedings against him. As Sammons never had a legal right to the money, he had no right to spend it on legal counsel. The fact that this $9,020 was the only money the defendant had is irrelevant to

our legal analysis. Here, as in *Caplin & Drysdale,* when the defendant claims "that he has suffered some substantial impairment of his Sixth Amendment rights by virtue of the seizure or forfeiture of assets in his possession, such a complaint is no more than the reflection of 'the harsh reality that the quality of a criminal defendant's representation frequently may turn on his ability to retain the best counsel money can buy.'" *Id.* 109 S.Ct. at 2655 (quoting *Morris v. Slappy,* 461 U.S. 1, 23, 103 S.Ct. 1610, 1622, 75 L.Ed.2d 610 (1983) (Brennan, J., concurring in result)).

## IV.

### Failure of Judge Edgar to Recuse Himself From the Trial

Sammons next argues that Judge Edgar erred in failing to recuse himself pursuant to 28 U.S.C. §§ 144 and 455(a) because of personal bias. In support of this argument, Sammons argues that the cumulative effect of the following "facts" required recusal:

(1) Alleged improper 1986 ex parte meetings with the prosecutor and illegal *extra-judicial* conduct in obstructing a timely parole hearing in 1986;

(2) Erroneous and *atypical* 1986 and 1988 judicial rulings....

(3) Judge Edgar's awareness of prejudicial information which would have been withheld from a jury....

(4) Judge Edgar's participation in plea negotiations in violation of Rule 11(e)(1) FRCrP.

(Pro Se Brief of Appellant at 3–4.) We find these unsupported allegations wholly insufficient to implicate the recusal statutes.

■ Recusal is mandatory pursuant to 28 U.S.C. § 144 "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." Sammons never filed the required affidavit, and was not, therefore, entitled to recusal under 28 U.S.C. § 144. *See Eas-*

---

**12.** The referenced subsection (a)(6) subjects to forfeiture "[a]ll moneys ... furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys ... used or intended to be used to facilitate any violation of this subchapter...."

ley v. University of Michigan Bd. of Regents, 853 F.2d 1351, 1357 (6th Cir.1988).

On appeal, Sammons claims that allegations of a conspiracy between Judge Edgar and Assistant United States Attorney Dedrick made in a petition to this court for a writ of mandamus seeking to compel recusal should have been construed to meet the affidavit requirement. The argument is facially absurd. To begin with, as the petition was directed to this court, and not to Judge Edgar, it is difficult to see how the judge could have read it at all, let alone read it as an affidavit under 28 U.S.C. § 144. Additionally, the petition for mandamus contains nothing but conclusory allegations and does not point to any extrajudicial sources from which the alleged bias and prejudice might have arisen. Accordingly, even if it had been filed as an affidavit, we would not read it to compel recusal. See Easley, 853 F.2d at 1357.[13]

■■■ Next, Sammons claims that Judge Edgar should have recused himself under section 455(a), which provides that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." We review a district court's denial of a motion to recuse under section 455(a) for abuse of discretion, Wheeler v. Southland Corp., 875 F.2d 1246, 1251 (6th Cir.1989); In re City of Detroit, 828 F.2d 1160, 1166 (6th Cir.1987), and find none here.

It has long been the law of this circuit that "a judge must recuse [himself] if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." Hughes v. United States, 899 F.2d 1495, 1501 (6th Cir. 1990), petition for cert. filed, 59 U.S.L.W. 3055 (U.S. July 12, 1990) (No. 90-90); see also Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 861, 108 S.Ct. 2194, 2203, 100 L.Ed.2d 855 (1988); Easley v. University of Michigan Bd. of Regents, 906 F.2d 1143 (6th Cir.1990); Wheeler v. Southland Corp., 875 F.2d 1246, 1251 (6th Cir.1989). The standard is an objective one; hence, the judge need not recuse himself based on the "subjective view of a party" no matter how strongly that view is held. Browning v. Foltz, 837 F.2d 276, 279 (6th Cir.1988), cert. denied, 488 U.S. 1018, 109 S.Ct. 816, 102 L.Ed.2d 805 (1989).

In addition, prejudice or bias must be personal or extrajudicial in order to justify recusal under section 455(a). We explained this requirement in Wheeler:

> "Personal" bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases. Personal bias arises out of the judge's background and associations. The critical test is whether the alleged bias "stem[s] from an extrajudicial source and result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case."

875 F.2d at 1251–52 (citations omitted). Accordingly, the requisite showing of prejudice may not be made, as Sammons seeks to make it, by pointing to "erroneous and atypical ... judicial rulings." (Pro Se Brief of Appellant at 3). See, e.g., Traficant v. C.I.R., 884 F.2d 258, 267 (6th Cir. 1989). In fact, each of the facts that Sammons adduces in support of recusal is a product of Judge Edgar's "participation in the proceedings or prior contact with related cases," Wheeler, 875 F.2d at 1251–52, and cannot, therefore, support his demand for recusal.[14] In any event, a thorough review of the record in this case convinces us that no reasonable person could harbor the slightest doubt as to Judge Edgar's fairness in the conduct of this trial.

---

13. Finally, Sammons' failure to file an affidavit cannot be ascribed to ignorance of the statute when, in our denial of the petition, we cited City of Cleveland v. Krupansky, 619 F.2d 576, 578 (6th Cir.), cert. denied, 449 U.S. 834, 101 S.Ct. 106, 66 L.Ed.2d 40 (1980), a case containing extensive discussion of 28 U.S.C. § 144.

14. Needless to say, Sammons' own characterization of Judge Edgar's alleged ex parte meetings with Assistant United States Attorney Dedrick as "extrajudicial" are not dispositive. This conduct clearly relates to Judge Edgar's involvement in a related case and cannot, therefore, support Sammons' demand for recusal.

## V.

Selective Prosecution and Prosecutorial Vindictiveness

■ Sammons filed numerous pretrial motions seeking dismissal of the charges against him as the product of "prosecutorial vindictiveness." On appeal, he cites two pieces of evidence as showing that personal malice motivated Assistant United States Attorney Dedrick to bring the charges in this action. First, he points to an affidavit of his attorney in a 1984 prosecution in the United States District Court for the Southern District of Texas in which the attorney stated that he noticed that Dedrick "had a personal dislike for Mr. Sammons." Sammons also points to testimony from a September 1988 evidentiary hearing in which Dedrick noted that he felt the sentence Sammons received in the 1984 conviction was "very lenient." The defendant claims that this action was brought against him in federal court as opposed to state court because of a personal vendetta that Dedrick has been carrying out against him.

In *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the Supreme Court held that "[i]n our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Id.* at 364, 98 S.Ct. at 668 (footnote omitted). Nevertheless, due process concerns are implicated where a prosecutor brings charges against an individual on the basis of an "unjustifiable standard such as race, religion, or other arbitrary classification[.]" *Id.* (quoting *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962)).

In *United States v. Hazel*, 696 F.2d 473 (6th Cir.1983), we held that:

> [A] defendant asserting a selective prosecution ... "bears the heavy burden of establishing, *at least prima facie*, (1) that while others similarly situated have not generally been proceeded against because of conduct of the type forming the

basis of the charge against him, he has been singled out for prosecution, *and* (2) that the government's discriminatory selection of him has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent the exercise of his constitutional rights."

696 F.2d at 474 (quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir.1974) (emphasis supplied in *Hazel*)); *see also United States v. Silien*, 825 F.2d 320, 322 (11th Cir.1987). Applying this test, the district court found that the defendant had failed to make out a prima facie case because others involved in Sammons' scheme to smuggle marijuana had in fact been investigated and prosecuted.[15] *See United States v. Murphy*, 836 F.2d 248, 256 (6th Cir.) (rejecting defendant's selective prosecution argument because a codefendant, "like the defendant, was indicted, convicted and sentenced to prison."), *cert. denied*, 488 U.S. 924, 109 S.Ct. 307, 102 L.Ed.2d 325 (1988). Furthermore, the court found that "the evidence offered by the defendant does not establish an 'invidious' or 'bad faith' motive in seeking this prosecution." As Sammons has not shown these findings to be "clearly erroneous," they must stand. *See United States v. Benny*, 786 F.2d 1410, 1418 (9th Cir.) (clearly erroneous standard applicable to appellate review of selective prosecution claim), *cert. denied*, 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986).

■ Sammons also contends that a decision by Assistant United States Attorney Steven Cook to file a "Special Drug Offender Notice" in this case, constitutes prosecutorial vindictiveness. The Supreme Court has long held that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Bordenkircher*, 434 U.S. at 363, 98 S.Ct. at 668; *see also United States v. Goodwin*, 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982). Sammons asserts that Cook filed the notice in order to punish him for filing a motion to dismiss the indict-

---

**15.** Two of Sammons' co-conspirators, Daniel Blankenship and Randy Lee, were prosecuted along with him.

ment as vindictive and a motion for sanctions against Cook. The district court entered the following findings on the issue:

> The Assistant U.S. Attorney, Steven Cook, charged with vindictiveness here, testified that he did not file the drug offender notice earlier because he had not earlier been fully aware of the gravity of the defendant's extensive drug trafficking activities. The court credits this explanation. United States Attorneys are faced with pleadings, sometimes strongly worded ones, in opposition to Government positions, as an almost everyday occurrence. This Court cannot infer that any action which Mr. Cook has taken is motivated by pleadings filed by the defendant.

(Footnote omitted). Again, the defendant has not directed our attention to anything on the record that would cause us to question the district court's findings, much less find them clearly erroneous. *United States v. Meyer*, 810 F.2d 1242, 1244 (D.C. Cir.1986) (reviewing district court findings on a claim of prosecutorial vindictiveness under the clearly erroneous standard), *cert. denied*, 485 U.S. 940, 108 S.Ct. 1121, 99 L.Ed.2d 281 (1988).

Finally, Sammons seeks to ground a claim of prosecutorial vindictiveness on Cook's failure to engage in "good faith plea bargaining." We need respond only by citing Justice White's opinion for the Court in *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977): "[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial. It is a novel argument that constitutional rights are infringed by trying the defendant rather than accepting his plea of guilty." *Id.* at 561, 97 S.Ct. at 846.

## VI.

### Judicial Participation in Plea Discussions

Raising the issue for the first time on appeal, the defendant argues that Judge Edgar participated in plea negotiations in violation of Federal Rule of Criminal Procedure 11(e)(1). *See United States v. Adams*, 634 F.2d 830 (5th Cir.1981). We agree with Sammons that judicial participation in plea negotiations constitutes "plain error" under Rule 52(b) that may be corrected by an appellate court although not raised below. *Adams*, 634 F.2d at 836. In this case, however, the record is devoid of any indication whatsoever of such participation. Sammons attempts to supplement the record with an affidavit stating, without any foundation whatsoever, that Judge Edgar did so participate. The proper avenue for Sammons to develop a factual record on this issue is not through affidavits attached to his brief, but through a petition for a hearing pursuant to 28 U.S.C. § 2255. *Cf. United States v. Corbett*, 742 F.2d 173, 177–78 (5th Cir.1984) (where defendant raised unsubstantiated allegations that the prosecution had breached a plea agreement, relief was available only by way of 28 U.S.C. § 2255).[16] On the facts before us, we find Sammons' argument wholly lacking in merit.

## VII.

### The Adequacy of Sammons' Access to a Law Library and the Court's Delay in Appointing Advisory Counsel

Sammons next contends that he was deprived of his fifth and sixth amendment rights by the court's failure to grant him unfettered access to a law library and its delay in appointing standby counsel.

On June 22, Sammons moved for access to a law library, asserting that a paging procedure the court had ordered was inadequate. The court responded with an order on June 24 stating that Sammons would be given "reasonable access to this Court's law library to be coordinated through the United States Marshals Ser-

---

**16.** Nothing in our decision today prejudices Sammons' right to move for relief under section 2255, nor do we comment on whether he would be entitled to such relief or even an evidentiary hearing in the district court. *See Corbett*, 742 F.2d at 178 n. 11; *United States v. McCord*, 618 F.2d 389, 393 (5th Cir.1980); *Porcaro v. United States*, 784 F.2d 38, 42 (1st Cir.1986) (on appeal from an order dismissing § 2255 petition without a hearing, allegations that trial judge participated in plea negotiations "should receive further attention on remand.").

vice, not to exceed two (2) days per week, during times and hours determined reasonable and necessary by the U.S. Marshal." The court also provided Sammons access to a telephone during these periods. Sammons now complains that this order was so inadequate as to constitute a denial of the motion. To begin with, we note that the defendant was, at that time, proceeding without counsel, and that there is no doubt as to the validity of this waiver. Addressing a similar situation in *United States v. Smith,* 907 F.2d 42 (6th Cir.1990), we found "that by knowingly and intelligently waiving his right to counsel, the appellant also relinquished his access to a law library." *Id.* at 45. The rationale behind that decision tracked that of the Seventh Circuit in *United States ex rel. George v. Lane,* 718 F.2d 226 (7th Cir.1983). Dealing with the appointment of counsel in a state criminal proceeding, the *Lane* court held: "The offer of court-appointed counsel to represent a defendant satisfied the constitutional obligation of a state to provide a defendant with legal assistance under the Sixth and Fourteenth Amendments." 718 F.2d at 231. *See also United States v. Chatman,* 584 F.2d 1358, 1359 (4th Cir.1978). Our holding that "the state does not have to provide access to a law library to defendants in criminal trials who wish to represent themselves," *Smith,* 907 F.2d at 45, disposes of Sammons' first objection.

■■■ In a related argument, Sammons contends that his sixth amendment rights were infringed by the district court's two-week delay in securing the appointment of standby counsel when Sammons finally requested it to aid in plea negotiations. There is no doubt that a criminal defendant is entitled to representation by counsel in plea negotiations. *See Brady v. United States,* 397 U.S. 742, 758, 90 S.Ct. 1463, 1474, 25 L.Ed.2d 747 (1970). Whether failure to provide it in timely fashion will merit reversal of a conviction is another matter. In *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the Supreme Court explained that "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." *Id.* at 658, 104 S.Ct. at 2046; *see also United States v. Morrison,* 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981) ("certain violations of the right to counsel may be disregarded as harmless error"). We perceive no constitutional violation in this delay because the defendant was not prejudiced thereby. While Sammons alleges that he was unable to plea bargain effectively during this period because standby counsel had not been appointed, at no time during the trial did he ever request an extension of the deadline for plea negotiations so as to allow his advisory counsel adequate time to negotiate a settlement. In fact, his advisory counsel eventually did engage in extensive plea negotiations with the government. The defendant has failed to present us with any "effect of challenged conduct on the reliability of the trial process," and we must, therefore, reject his claim.

## VIII.

### Failure of the Government to Provide the Defendant with Addresses of Potential Witnesses

■■■ As he was preparing his case for trial, Sammons moved the court to compel the government to give him the addresses and whereabouts of three potential witnesses: Donald Lee, Gerald Simer, and Daniel Blankenship. The court responded in a July 22 order that "upon representation by the Government that it has no direct knowledge of the whereabouts of the individuals specifically requested to be located in the defendant's motion, the Court determines that said motion should be, and is, DENIED." The defendant has adduced no evidence to show that the government did, in fact, know the location of the three witnesses.

■■■ "When a defendant makes a request for information concerning [witnesses'] whereabouts, the government should comply promptly, unless it asserts a privilege ... not to do so." *United States v. Ariza–Ibarra,* 651 F.2d 2, 13 (1st Cir.),

cert. denied, 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981) (citing Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)); United States v. SAA, 859 F.2d 1067, 1073–74 (2d Cir.1988), cert. denied, 489 U.S. 1089, 109 S.Ct. 1555, 103 L.Ed.2d 858 (1989); United States v. Fischel, 686 F.2d 1082 (5th Cir.1982). Obviously, where the government does not know the whereabouts of the witness sought, it is not under an absolute duty to ascertain the information. Cf. Fitzpatrick v. Procunier, 750 F.2d 473, 476 (5th Cir. 1985) ("The government does not labor under an absolute duty to produce an informant whose whereabouts, after diligent search, remain unknown."). United States v. Gonzalez, 582 F.2d 991, 993 (5th Cir. 1978) (Trial court did not err in refusing to order the government to produce an informant or grant a continuance. "Since the facts clearly showed that the Government was unaware of the informant's location and had unsuccessfully made a reasonable effort to locate him, such an order would have been useless.").

Even if we were to conclude that the trial judge should have ordered the government to do more, the improper denial of a discovery request does not, however, mandate overturning a conviction. Fischel, 686 F.2d at 1093. In order to merit reversal, Sammons must show that his defense was materially prejudiced by the failure to provide the addresses.[17] To meet this test, Sammons must demonstrate that he was unable, despite his best efforts, to obtain access to the three witnesses himself, and that access to the three prior to trial would have materially advanced his defense. See Fischel, 686 F.2d at 1093. Sammons has not satisfied either requirement. On appeal, he claims only that he would have been better prepared to cross

examine the three had he secured an interview with them prior to trial. He does not claim that he used his best efforts to locate them, nor does he explain in any particular way how effective cross examination of these witnesses would have furthered his cause. Accordingly, we find that the district court's failure to order production of the witnesses' addresses was harmless error not requiring remand.

IX.

The Validity of the Sentence

A. The Court's Consideration of Defendant's 1981, 1984, and 1986 Convictions

Sammons claims that the district court erred in considering three of his prior convictions in determining his sentence.[18]

Fundamental principles of due process prohibit a sentencing judge from considering prior unconstitutionally obtained convictions in sentencing. United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) (sentencing court may not consider prior convictions unconstitutionally obtained in violation of the sixth amendment right to counsel); Bourgeois v. Whitley, 784 F.2d 718, 721 (5th Cir.1986) (Tucker not limited to sixth amendment violations). The appellate courts have insisted that "where the sentencing court relies on information of contested accuracy, the defendant must have some meaningful opportunity to rebut the information." United States ex rel. Welch v. Lane, 738 F.2d 863, 865 n. 3 (7th Cir.1984); see also, McAffee v. Procunier, 761 F.2d 1124, 1128 (5th Cir.), cert. denied, 474 U.S. 907, 106 S.Ct. 237, 88 L.Ed.2d 238 (1985); United States v. Williams, 668 F.2d 1064, 1072 (9th Cir.1981); Collins v. Buchkoe, 493 F.2d 343, 346 (6th Cir.1974). Sammons

17. We note that Sammons has not demonstrated any evidence that the government acted in bad faith in denying the addresses. Were bad faith shown, we would be less willing to let the conviction stand. See Clark v. Blackburn, 632 F.2d 531 (5th Cir.1980); Freeman v. Georgia, 599 F.2d 65 (5th Cir.1979), cert. denied 444 U.S. 1013, 100 S.Ct. 661, 62 L.Ed.2d 641 (1980). Additionally, this case does not involve the government's willful failure to comply with a court order to supply a witness' address, a circumstance that has caused courts to order reversal. See United States v. Opager, 589 F.2d 799 (5th Cir.1979).

18. Because the offenses for which Sammons was convicted occurred prior to November 1, 1987, the Sentencing Reform Act and the Sentencing Guidelines promulgated thereunder do not apply.

does not contest the fact that he was afforded this opportunity at his sentencing hearing. *See United States v. Fogel,* 829 F.2d 77, 90 (1st Cir.1987) ("At the sentencing hearing, the court afforded appellant and his counsel an opportunity to testify and the appellant did testify at great length. This is all that appellant was entitled to under the law.").

Sammons bore the burden of showing, first, that his prior convictions were unconstitutional, *see United States v. Williams,* 782 F.2d 1462, 1466 (9th Cir.1985); *Fogel,* 829 F.2d at 90, and, second, that the sentencing judge, under the misapprehension that they were valid, relied upon them in enhancing the sentence. *See Williams,* 782 F.2d at 1466; *United States v. Fleishman,* 684 F.2d 1329, 1346 (9th Cir.), *cert. denied,* 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). We find that Sammons has failed to satisfy the first prong of the test with regard to the 1981 and 1984 convictions, and has failed to satisfy the second prong with regard to the 1986 conviction.

■■■ The district court dismissed Sammons' contentions that his 1981 and 1984 convictions were unconstitutionally obtained as "unsubstantiated allegations of illegal convictions and sentences without merit or factual substance." The same might be said of his arguments on appeal, as his brief is no more than a rehash of prior unsubstantiated allegations made in various motions filed with the district court.[19] As to the 1986 conviction, the district judge stated in no uncertain terms on the record that he would not consider that conviction as an aggravating factor. The defendant has presented us with no evidence whatsoever that the court did in fact consider this conviction; accordingly,

no *Tucker* violation has occurred. *Williams,* 782 F.2d at 1467.

■■■ Along the same lines, the defendant argues that he was deprived of his right to allocution under Federal Rule of Criminal Procedure 32(a)(1)(C) because the district court's rulings on his challenges to the validity of his prior convictions prevented him from presenting the hardship those convictions had wrought on his life. In *Green v. United States,* 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961), the Court determined that Rule 32 "explicitly affords the defendant two rights: 'to make a statement in his own behalf,' and 'to present any information in mitigation of punishment,'" *id.* at 304, 81 S.Ct. at 655, and that both these rights were satisfied where the trial judge issued the defendant "a personal invitation to speak prior to sentencing." *Id.* at 305, 81 S.Ct. at 665. Here, Judge Edgar explicitly informed Sammons: "You have the right, a right of allocution, as we call it, to say anything you want to say to the Court to present any factors that you want to." Sammons then spoke at length. There was no denial of the right to allocution.

### B. *Double Jeopardy*

■■■ Next, Sammons argues that the sentence imposed upon him in this case violates the constitutional guarantee against double jeopardy.[20] The Supreme Court has long held that "the Double Jeopardy Clause of the Fifth Amendment prohibits successive prosecutions for the same criminal act or transaction under two criminal statutes whenever each statute does not 'requir[e] proof of a fact which the other does not.'" *Grady v. Corbin,* —— U.S. ——, 110 S.Ct. 2084, 2087, 109 L.Ed.2d 548 (1990) (quoting *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)).[21] Sammons has de-

**19.** In his brief, defendant promises to present facts and legal arguments relevant to the validity of these convictions in a document entitled "Pro se Supplemental Joint Appendix." No such document has been filed with the court.

**20.** The double jeopardy clause states: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

**21.** In *Grady,* the Court also held that "the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." 110 S.Ct. at 2087 (footnote omitted). This second prong of the double jeopardy test has no application where, as here, the al-

clined to elaborate on just how the double jeopardy clause might have been violated in this case. It appears that the only colorable double jeopardy claim is that Counts I and II of the indictment, charging violations of the Travel Act through aiding and abetting, 18 U.S.C. §§ 1952(a)(3) and (2), and Count V, charging conspiracy to import and distribute marijuana, 21 U.S.C. §§ 846 and 963, are, under the circumstances of this case, duplicative. This argument was thoroughly addressed by the Eighth Circuit in *United States v. Cerone*, 830 F.2d 938, 944-46 (8th Cir.1987), *cert. denied*, 486 U.S. 1006, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988). There, the court determined that "the legislative history underlying the Travel Act indicates that Congress did not intend conspiracy to merge with aiding and abetting a Travel Act offense." *Cerone*, 830 F.2d at 946; *see* H.R.Rep. No. 966, 87th Cong., 1st Sess. 2, *reprinted in* 1961 U.S.CODE CONG. & ADMIN.NEWS 2664, 2665. Sammons' double jeopardy claims are, accordingly, without merit. *See generally United States v. Coldwell*, 898 F.2d 1005 (5th Cir.1990) (no double jeopardy in an indictment charging possession of a controlled substance with intent to distribute, importation of a controlled substance, and violations of the Travel Act.)

**C. *The Severity of the Sentences***

In his final claim of error, Sammons argues that Judge Edgar's decision to sentence him to the maximum term of imprisonment on each count of the indictment yielded an unjust result. In *United States v. McCann*, 835 F.2d 1184 (6th Cir. 1987), *cert. denied*, 486 U.S. 1026, 108 S.Ct. 2004, 100 L.Ed.2d 234 (1988), this court set out the standard of review for sentencing decisions not governed by the Sentencing Guidelines:

> An appellate court's review of a sentencing court's decision is characterized by utmost deference. As the Supreme Court made clear in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), it is not normally the role of an appellate court to second-guess the trial

leged violation is contained within one indict-

judge's determination of an appropriate sentence. "Rather, an appellate court must determine only whether the sentence imposed is so grossly disproportionate to the crime as to constitute cruel and unusual punishment." *United States v. Darby*, 744 F.2d 1508, 1525 (11th Cir.1984).

835 F.2d at 1187. Based on Sammons' extensive prior criminal history, the details of which the district court is far more familiar than are we, the sentence imposed here, while undeniably severe, is not so excessive as to require reversal.

AFFIRMED.