91 F.3d 145
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
SPANISH COVE SANITATION, INC., and John Lawson, Defendants-Appellants.
 No. 94-6508, 94-6509.
 United States Court of Appeals, Sixth Circuit.
 June 28, 1996.
 
 Before: NELSON and BOGGS, Circuit Judges, and GILMORE, District Judge.[1]
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 This is a consolidated appeal from convictions and sentences in criminal proceedings brought under the Federal Clean Water Act. The defendants, Spanish Cove Sanitation, Inc., and its president and owner, John Lawson, were found to have discharged pollutants from a sewage treatment plant into the navigable waters of the United States in violation of 33 U.S.C. §§ 1311(a) and 1319(c)(1)(A). On appeal, both defendants argue (1) that they were impermissibly singled out for prosecution; (2) that the trial court erred by not allowing the introduction of evidence concerning violations by other sewage treatment plants; (3) that the federal government lacked authority to prosecute the defendants criminally for violations of the Clean Water Act; (4) that the trial court should have granted a mistrial because of prejudicial statements made by a prosecution witness; (5) that the government failed to prove that the stream into which the pollutants were discharged constituted "navigable waters;" and (6) that the trial court improperly found that the defendants' motion for a new trial was not timely filed. Spanish Cove also argues that the trial court erred by imposing a fine which the company cannot pay, while Mr. Lawson contends that the trial court erred in its application of the sentencing guidelines.
 
 
 2
 We shall affirm both the conviction and the sentence of Mr. Lawson and the conviction of Spanish Cove. In light of the financial data contained in the record that we recently received from the district court, however, we are of the opinion that the fine imposed on Spanish Cove was excessive. We shall therefore remand the company's case to the district court for redetermination of the fine.
 
 
 3
 * Spanish Cove owns and operates a small sewage treatment plant in Jefferson County, Kentucky. Mr. Lawson built the plant in the 1970s to serve a subdivision he had developed. The plant treats wastewater--through aeration and chlorination, primarily--and then discharges the effluent into a watercourse known as Fern Creek.
 
 
 4
 The defendants were charged with twelve misdemeanor and five felony violations of the Clean Water Act. The misdemeanor counts alleged that the defendants negligently discharged pollutants into Fern Creek. These charges were based upon "discharge monitoring reports" that Spanish Cove was required to prepare under the Act. An independent laboratory--functioning under contract with Spanish Cove--collected samples of effluent discharged from the plant, tested the effluent, completed the reports, and returned the reports to Spanish Cove for signature and forwarding to the Kentucky Department of Water. The reports showed that on the dates named in the indictment Spanish Cove exceeded permissible levels for certain pollutants.
 
 
 5
 The felony counts of the indictment charged the defendants with knowing discharge of pollutants. Three of the felony counts involved an incident in which Mr. Lawson pumped water from a lagoon on the facility into the creek despite written instructions from the county health department not to do so. The water that was discharged contained fecal coliform bacteria in excess of the legal limits. The other two felony counts involved subsequent inspections in which the defendants were also found to have been discharging effluent containing excessive amounts of fecal coliform bacteria. On one of these occasions no chlorine tablets--tablets that are necessary to treat the wastewater--could be found at the plant.
 
 
 6
 A jury found the defendants guilty on all five of the felony counts and nine of the twelve misdemeanor counts. The verdicts were returned and filed on April 13, 1994, and were entered on the district court's docket the following day. A motion for a new trial was denied as untimely. Spanish Cove was sentenced to pay a fine of $35,000 and was ordered to pay a special assessment of $2,125. Mr. Lawson was ordered to pay a special assessment of $475 and was sentenced to imprisonment for a term of six months. Both defendants perfected timely appeals. Because of the pendency of certain post-trial motions in the district court, however, the record was not transmitted to our court until March 27, 1996.
 
 II
 
 7
 The defendants first argue that the district court should have dismissed the case on selective prosecution grounds. A prima facie case of selective prosecution requires a showing that (1) others who engaged in the same conduct were not prosecuted, and (2) the government singled out the defendant for prosecution based upon "such impermissible considerations as race, religion, or the desire to prevent the exercise of his constitutional rights." United States v. Bustamante, 805 F.2d 201, 202 (6th Cir.1986), quoting (with minor changes) United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir.1974). We must take special care in assessing a claim of selective prosecution because such a claim "asks a court to exercise judicial power over a 'special province' of the Executive." United States v. Armstrong, 116 S.Ct. 1480, 1486 (1996), quoting Heckler v. Chaney, 470 U.S. 821 (1985). We review for "clear error," United States v. Sammons, 918 F.2d 592, 600 (6th Cir.1990), bearing in mind the Supreme Court's admonition that " '[t]he presumption of regularity supports' [ ] prosecutorial decisions and 'in the absence of clear evidence to the contrary, courts presume [prosecutors] have properly discharged their official duties.' " Armstrong, 116 S.Ct. at 1486, quoting United States v. Chemical Found., Inc., 272 U.S. 1, 14-15 (1926).
 
 
 8
 To support their claim of selective prosecution, the defendants rely primarily upon reports of a large number of violations by the government-operated Louisville Metropolitan Sewer District (MSD). The defendants point out that MSD had 829 discharge monitoring report violations between January 1989 and January 1993, but was subjected only to civil, not criminal, enforcement actions.
 
 
 9
 Although MSD did report numerous discharge monitoring report violations at its 71 plants, there is nothing to indicate that MSD engaged in the type of willful violations upon which the felony charges against Spanish Cove were predicated. Even if we were to assume that the defendants were prosecuted for violations of a type for which similar wrongdoers were not prosecuted, moreover, there is absolutely no evidence that the defendants were singled out based upon impermissible motives.
 
 
 10
 The defendants also contend that the prosecution was vindictive. They were prosecuted, the defendants argue, because they refused to accept a government offer allowing them to plead guilty to a single misdemeanor charge. In "the 'give and take' of plea bargaining," however, there is no violation of the Due Process Clause "so long as the accused is free to accept or reject the prosecution's offer." Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978). Here there is nothing to indicate that the defendants were not completely free to accept the government's offer. The claim of vindictive prosecution must therefore fail as well.
 
 III
 
 11
 At trial the defendants attempted to introduce evidence of violations by other operators. The district court refused to allow this evidence, believing it irrelevant to the charges against the defendants. The defendants argue on appeal that the evidence should have been admitted as relevant to the standard of care. The defendants did not make this argument below, however, and they may not do so for the first time in this court.
 
 IV
 
 12
 The defendants also argue that the State of Kentucky has "primacy" to enforce the Clean Water Act, and that federal prosecution violates both the Due Process Clause and the intent of the Clean Water Act. The defendants have cited no authority to support their contention that the federal government is somehow precluded from enforcing this federal statute, and we are aware of no such authority.
 
 V
 
 13
 At trial an inspector from the Jefferson County Health Department, Michael Baugh, testified that he had discovered unauthorized plastic pipes discharging waste materials at the site. Mr. Baugh recounted that after taking samples from the pipes, he had hurried to get away:
 
 
 14
 "I felt like I was, like here I was, I had stepped into something that I knew obviously shouldn't have been happening and I was in the middle of a forested area and I could just picture little, you know, sounds going off and me being found in an aeration tank."
 
 
 15
 The court immediately instructed the jury to disregard Mr. Baugh's comments. After Mr. Baugh completed his testimony, the defense moved for a mistrial based upon the alleged prejudicial effect of the statements. The court denied the motion, noting that after the statement was made "everybody was chuckling a little bit, and it was right after he said something about [how he] thought your client was a nice guy and so forth." In light of the trial judge's opportunity to judge the manner in which the comments were made and their effect on the jury, and given the prompt curative instruction, we cannot say that the trial court erred in not granting a mistrial.
 
 VI
 
 16
 The defense also argues that the district court should have dismissed the charges under Rule 29, Fed.R.Crim.P., based upon insufficiency of the evidence. Most significantly, in this regard, the defense argues that the prosecution failed to demonstrate that Fern Creek qualifies as "navigable waters."
 
 
 17
 The Clean Water Act defines navigable waters as "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). Regulations codified in the Code of Federal Regulations and applied by the court in United States v. Larkins, 852 F.2d 189, 190 n. 1, n. 3 (6th Cir.1988), cert. denied, 489 U.S. 1016 (1989), say that "the waters of the United States" include:
 
 
 18
 "(a) All waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide;
 
 
 19
 * * *
 
 
 20
 (c) All other waters such as intrastate lakes, rivers, streams (including intermittent streams), mudflats, and sandflats, 'wetlands,' sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds the use, degradation, or destruction of which would affect or could affect interstate or foreign commerce including any such waters;
 
 
 21
 (1) Which are or could be used by interstate or foreign travelers for recreational or other purposes;
 
 
 22
 (2) From which fish or shellfish are or could be taken and sold in interstate or foreign commerce; or
 
 
 23
 (3) Which are used or could be used for industrial purposes by industries in interstate commerce;
 
 
 24
 * * *
 
 
 25
 (e) Tributaries of waters identified in paragraphs (a) through (d) of this definition;
 
 
 26
 ...." 40 C.F.R. § 122.2.
 
 
 27
 In United States v. Ashland Oil & Transp. Co., 504 F.2d 1317 (6th Cir.1974), this court surveyed the legislative history of the Clean Water Act and concluded that the term "navigable waters" should be given an extremely broad construction. Congress, the court explained, intended that the Act apply "to all water bodies, including main streams and their tributaries." Id. at 1325, quoting comments of Congressman Dingell. Relying upon this broad definition, this court found that the Clean Water Act applied where a pollutant had been discharged into a non-navigable tributary of a non-navigable tributary of a non-navigable tributary of a small navigable river. Id. at 1320. See also International Paper Co. v. Ouellette, 479 U.S. 481, 486 n. 6 (1987) (noting that the term "has been construed expansively to cover waters that are not navigable in the traditional sense"); National Wildlife Fed. v. Consumers Power Co., 862 F.2d 580, 589 (6th Cir.1988) (recognizing that it was "Congress's intent ... that the term 'navigable waters' be given the broadest possible constitutional interpretation").
 
 
 28
 In the case at bar the prosecution presented evidence that Fern Creek waters "would migrate to the Ohio River." There is no dispute that the Ohio River is used in an interstate commerce. Accordingly, we believe there was sufficient evidence from which a reasonable jury could have found that the defendants discharged pollutants into "navigable waters."
 
 VII
 
 29
 The district court denied the defendants' motion for a new trial as not having been filed within the time prescribed by Rule 33, Fed.R.Crim.P. The rule provides that such a motion, where not based on newly discovered evidence, "shall be made within 7 days after verdict...." The defendants argue that the district court erred by counting the time from the date on which the jury returned its verdict, rather than the date on which the verdict was entered in the docket. But the date of entry is not the date of the verdict. The time runs from the date on which the jury returns its verdict, not the date on which the clerk enters the verdict in the docket. See United States v. DeRocco, 320 F.2d 58, 59 (6th Cir.1963).
 
 VIII
 
 30
 Mr. Lawson argues that his sentencing guidelines offense level should have been reduced for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. At trial, however, Mr. Lawson denied the factual elements of guilt. He contended, for example, that the samples upon which the misdemeanor counts were predicated had not been taken from the proper location and had not been properly tested. At no point in the proceedings did he admit that he had engaged in the conduct with which he was charged. The district court was therefore within its discretion in not adjusting the offense level downward for acceptance of responsibility.
 
 IX
 
 31
 Nor do we find error in the district court's decision to adjust Mr. Lawson's offense level upward on the ground that the violation "involved a discharge without a permit or in violation of a permit." Mr. Lawson argues that even though the discharges exceeded permissible levels, they were not in violation of the permit because the permit merely required that he keep records and monitor pollutant levels in the effluent. Be that as it may, Mr. Lawson admitted on the stand that he had discharged pollutants from four points of discharge when he only had a permit for one. This certainly constitutes a discharge without a permit.
 
 X
 
 32
 Spanish Cove argues that the district court erred in imposing a fine which the company does not have the ability to pay. U.S.S.G. § 8C3.2(b) provides that immediate payment of a fine need not be required where the court finds that an organization "is financially unable to make immediate payment or that such payment would pose an undue burden on the organization." U.S.S.G. § 8C3.3(b) allows a court to impose a fine in an amount less than otherwise would be required where "the court finds that the organization is not able, and even with the use of a reasonable installment schedule, is not likely to become able to pay the minimum fine." For the purposes of the guidelines, an organization is not able to pay the minimum fine, where, even with an installment schedule, "the payment of that fine would substantially jeopardize the continued existence of the organization." U.S.S.G. § 8C3.3, Application Note 1.
 
 
 33
 In this case the court imposed a fine of $35,000 on Spanish Cove after making a specific finding that the company had the ability to pay a fine in that amount. Spanish Cove filed a motion for reconsideration, and the district court stayed payment of the fine pending appeal.
 
 
 34
 There is persuasive evidence that Spanish Cove cannot pay a $35,000 fine--at least not in one installment. The company's latest balance sheet reflects virtually no liquid assets, and the record indicates that virtually all corporate income (roughly $2,050 per month) is used to cover expenses. The company's federal tax returns indicate that prior to utilizing a net operating loss deduction Spanish Cove had net income of only $2,243.53 in 1993, $23,988, in 1992,[2] a loss of $12,496 in 1991, a loss of $8,122 in 1990, and a loss of $7,207 in 1989. The company's financial situation looks a little better when we consider that a portion of its deductions from income--$6,635 in 1993, $6,197 in 1992, $8,552 in 1991, $8,552 in 1990, and $8,552 in 1989--constituted depreciation for plant and plant equipment. Presumably the capital investments in question were made in prior years, and thus Spanish Cove's taxable income is not entirely indicative of its ability to pay. Even if these sums were treated as part of Spanish Cove's annual income, however, it would not appear that the corporation could manage a single $35,000 payment.
 
 
 35
 A review of the company's balance sheets supports this conclusion. The most recent balance sheet (1994) shows assets of $60,844 and liabilities of $177,853. (Of the liabilities, $147,353 represents loans from "John Lawson Realty Co., Inc.") The assets consist almost entirely of the sewer plant, the equipment necessary to run the plant, and the land on which the plant sits.
 
 
 36
 The financial records thus demonstrate that the corporation barely receives enough funds each year to keep the sewer plant in operation, and that the corporation has no assets other than those necessary to operate the facility. This assessment of the financial health of Spanish Cove is supported by a determination of the United States trustee in Mr. Lawson's personal bankruptcy proceeding. The trustee formally abandoned "[a]ny interest the estate may have in Spanish Cove Sanitation, Inc.... because it appears ... that Spanish Cove [ ] is insolvent and of no value to the estate." The abandonment was approved by the bankruptcy judge.
 
 
 37
 The district court's determination that Spanish Cove is able to pay a $35,000 fine in a single payment was clearly erroneous, in our view. The fine against Spanish Cove is therefore VACATED, the Spanish Cove judgment is AFFIRMED in all other respects, and the case appealed to us as No. 94-6508 is REMANDED for redetermination of the fine. The judgment entered against Mr. Lawson in the case appealed to us as No. 94-6509 is
 
 
 38
 AFFIRMED.
 
 
 
 [1]
 The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 This was largely due to income realized from forgiveness of a $20,840 debt