36 F.3d 77
 UNITED STATES of America, Plaintiff-Appellee-Cross-Appellant,
v.
Lee KHANG, Defendant-Appellant-Cross-Appellee.
UNITED STATES of America, Plaintiff-Appellee-Cross-Appellant,
v.
Say Pha KHANG, Defendant-Appellant-Cross-Appellee.
 Nos. 93-50174, 93-50265, 93-50180 and 93-50270.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 7, 1994.
Decided Sept. 20, 1994.
 
 Morton H. Boren, Los Angeles, CA, for defendant-appellant Lee Khang.
 Humberto Diaz, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant Say Pha Khang.
 Daniel P. Collins, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.
 Appeals from the United States District Court for the Central District of California.
 Before: FARRIS, RYMER, and KLEINFELD, Circuit Judges.
 KLEINFELD, Circuit Judge:
 
 
 1
 This is a sentencing guidelines case. It raises questions of whether the increase for obstruction of justice and the decrease for acceptance of responsibility can be imposed in the same case, and whether the third point for acceptance of responsibility can be awarded to equalize sentences. Although one appellant also claims that insufficient consideration was given to a departure downward based on cultural differences between his native culture and American society, this issue is a red herring, because the district court found that there was no factual basis for such a departure.
 
 
 2
 Lee Khang and Say Pha Khang are Hmong. They are half brothers, born and brought up in Laos. They came to the United States, one as a teenager and the other in his thirties. They had lived in the United States for 10 or 15 years, when they were caught at Los Angeles International Airport smuggling 7.8 kilograms of opium into the country on their way home from Thailand. The opium was hidden in the walls of two fire-protective file boxes and 30 hollowed-out D cell batteries.
 
 
 3
 I. Analysis.
 
 
 4
 A. Obstruction of Justice.
 
 
 5
 Both appellants claim that the district court erred in adjusting their offense level upward two levels for obstruction of justice, because the evidence was insufficient to establish that they lied, or if they did, that their lies were material. The subject of what the district court found to be false was the Khangs' cultural explanation of their motive.
 
 
 6
 At sentencing, both appellants claimed that they brought the opium into the country as medicine, to give relief to their ill, aging father. They submitted a letter from a "Hmong cultural consultant" stating that the Hmong use opium for medicinal purposes.
 
 
 7
 However, their stories differed from each other and changed over time. Lee Khang from the beginning said that he had bought the opium for his father, but Say Pha Khang claimed, when caught at the airport, that a man had told him to give the batteries and fileboxes to someone in Minnesota, and that he did not know they contained opium. Say Pha Khang later told the probation officer that he knew he was bringing in opium, but that it was for his sick father. Both Khangs said they did not know opium was illegal in the United States when used for medical purposes.
 
 
 8
 The district judge did not believe the appellants' stories. He indicated that he might depart downward if the opium was for the Khangs' sick father, but concluded that it was not. Among the reasons for his skepticism were the changes in the Khangs' accounts. Also, the amount of opium seemed very large for one aged individual. Nor did the appellants submit any medical evidence, such as a doctor's report, to establish that their father was sick. Although the father submitted a letter apologizing for his sons' conduct, it did not mention that he was sick, or that he had asked for the opium. The appellants said their father had suffered from his illness for the entire time he lived in the United States, since 1978, but had no explanation of how he got relief from then until their 1992 trip. If, as they said, they did not they know opium was illegal, at least when used medicinally, then their concealment of the opium in the file box walls and D cells made no sense. Their explanation that they intended to hide the opium from potential thieves was characterized, without plain error, as "preposterous" by the district judge.
 
 
 9
 The judge concluded that "I have enough information, more than enough information to indicate that these two fellows are lying right through their teeth." He nevertheless offered appellants a continuance to provide evidence which would explain away some of the problems, such as the quantity of opium and the lack of medical records, "[a]nd if I am convinced that what your clients are telling is the truth, we are downward departing. If I am convinced they are lying, look out." The court granted a recess so that defense counsel could consult with their clients, but they declined to accept the continuance and provide more evidence. Say Pha Khang then testified that the opium would be about a three year supply. The judge did not believe it, because he did not think Mr. Khang was a credible witness.
 
 
 10
 We review the district judge's finding of obstruction of justice for clear error. United States v. Jackson, 974 F.2d 104, 105-06 (9th Cir.1992). There was none.
 
 
 11
 The obstruction was material, because the point of the lies was to obtain a downward sentencing departure. The guidelines provide a two-level increase "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." USSG Sec. 3C1.1 (emphasis added). Application note 5 defines "material" evidence as "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." A lie that is material to a defendant's claim that he should receive a downward departure is material to his sentencing.
 
 
 12
 B. Cultural departure.
 
 
 13
 Lee Khang argues that we should remand for a determination of whether he should get a downward departure because of cultural differences in the medicinal use of opium. We do not reach the question whether a departure on that ground would be appropriate. Mr. Khang had the burden of proving the factual basis for the departure he sought, United States v. Anders, 956 F.2d 907, 911 (9th Cir.1992), and failed. See United States v. Yu, 954 F.2d 951, 954 (3d Cir.1992). The district judge must decide the facts for himself, not uncritically defer to "experts" or accept representations about a culture with which he is unfamiliar. Credibility, the defendant's individual knowledge and responsibility, and applicability of American legal principles must be considered by the judge, not just assertions that things are done in a different way in another culture.
 
 
 14
 II. The government's cross-appeal.
 
 
 15
 A. Acceptance of responsibility.
 
 
 16
 The government argues that, because the Khangs obstructed justice by lying, the district court erred in granting them downward adjustments for acceptance of responsibility. Its argument is that by falsely denying relevant conduct, the Khangs disqualified themselves from the acceptance of responsibility adjustment. "[A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." USSG Sec. 3E1.1, comment. (n. 1(a)) The district judge found that the lies were not about relevant conduct.
 
 
 17
 Relevant conduct is conduct relating to the offense and affecting the offense level. See USSG Sec. 1B1.3. We have not found authority on whether lying about motive to get a departure is "relevant conduct." The term is defined to achieve a compromise between sentencing offenders for the crimes they actually committed and the crimes to which they have negotiated pleas. See William W. Wilkins, Jr. and John R. Steer, Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines, 41 S.C.L.Rev. 495 (1990); Stephen Breyer, The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest, 17 Hofstra L.Rev. 1 (1988). Lying about motive to obtain a departure does not fit within the purpose for which the category of relevant conduct has been established. It is not, in the special, technical sense in which Sec. 1B1.3 defines it, "relevant conduct."
 
 
 18
 That lying about motive to get a departure is not "relevant conduct" does not mean that it is not relevant, in the ordinary sense of the word, to sentencing. Such a lie may be, as it was here, obstruction of justice. USSG Sec. 3C1.1. Ordinarily, obstruction of justice disqualifies a defendant from an acceptance of responsibility adjustment.
 
 
 19
 Conduct resulting in an enhancement under Sec. 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both Secs. 3C1.1 and 3E1.1 may apply.
 
 
 20
 USSG Sec. 3E1.1, comment. (n. 4) The terms "ordinarily" and "extraordinary cases" in the application note allow for exceptions to this rule. We are bound by United States v. Gonzalez, 16 F.3d 985, 991 (9th Cir.1993), which establishes that lying about motive to commit the crime does not preclude downward adjustment for acceptance of responsibility, where the lie would not establish a defense to the crime or avoid criminal liability.
 
 
 21
 B. The third point.
 
 
 22
 The district judge awarded both defendants three points for acceptance of responsibility. The third point is supposed to be allowed for "timely" acceptance of responsibility:
 
 
 23
 If the defendant ... timely notif[ies] authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently, decrease the offense level by 1 additional level.
 
 
 24
 USSG Sec. 3E1.1(b). The government appeals the third point given to Say Pha Khang, but not Lee Khang, on the ground that his change of plea was not "timely." Although his brother pleaded guilty weeks before trial, Say Pha Khang did not advise of his intention to plead until 7:20 p.m. the night before trial.
 
 
 25
 The district judge did not find that this was "timely," in the sense of "permitting the government to avoid preparing for trial," and it is hard to see how it could be. Cf. United States v. Hopper, 27 F.3d 378, 385 (9th Cir.1994). He stated that his reason for awarding the third point was "I am going to have him imprisoned for the same period of time" as his brother. The guideline states what criteria determine eligibility for the third point. Equalization of sentences is not among them. These two men were equal in their criminality with respect to importing opium, so far as the record showed, but they were not equal in the timeliness of their acceptance of responsibility. The district court therefore lacked authority to adjust Say Pha Khang's sentence down the additional point for "timely" acceptance of responsibility.
 
 
 26
 AFFIRMED in part, REVERSED in part.