*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0272P (6th Cir.)
File Name: 01a0272p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
　　　*Plaintiff-Appellee,*

　　　*v.*

BARBARA A. MARKIN,
　　　*Defendant-Appellant.*

No. 99-3977

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 98-00208—George C. Smith, District Judge.

Submitted: December 1, 2000

Decided and Filed: August 17, 2001

Before: WELLFORD, SILER, and BATCHELDER,
Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Terry K. Sherman, Columbus, Ohio, for
Appellant. Dale W. Williams, Jr., ASSISTANT UNITED
STATES ATTORNEY, Columbus, Ohio, for Appellee.

　　BATCHELDER, J., delivered the opinion of the court, in
which SILER, J., joined. WELLFORD, J. (p. 14), delivered
a separate concurring opinion.

1

---

**OPINION**

---

ALICE M. BATCHELDER, Circuit Judge.    Criminal defendant, Barbara Markin, operated a business, through two related corporate entities, in which she contracted with major food packaging companies to set up demonstrations of new products in selected grocery stores.  Because Markin's clients paid her at the end of the contract period, Markin found herself unable to meet her weekly payroll.  She opened a line of credit with Huntington National Bank that was secured by her accounts receivable.  At time passed, however, Markin began using corporate funds for her own personal luxuries.  In order to maintain both her extravagant lifestyle and continue to meet her business payroll, Markin submitted false financial documents to Huntington that significantly inflated the actual amount of the companies' accounts receivable.  When the fraud was discovered, Markin's companies had outstanding loans well in excess of $10 million.  At the time the presentence investigation report was written, Huntington had been able to recover only $500,000 of the balance due.

Markin was charged with bank fraud in a one-count Information.  She decided to plead guilty, and the plea was entered on December 7, 1998.  A presentence report was generated, and the defendant filed her objections.    In particular, the defendant believed that the amount of loss attributed to her in excess of $10 million was inappropriate, and she moved to compel the government to provide her with the underlying documentation for that amount.

On the morning of June 2, 1999, the district court held a status conference to discuss the defendant's motion to compel and her need for additional discovery.  As part of the discussions, defendant's counsel, Mr. Sherman, noted that the presentence investigation report put the defendant's possible prison sentence within the guideline range from 51 to 63 months.  However, he argued, that if he were able to obtain the requested discovery, he might be able to prove that

## CONCURRENCE

HARRY W. WELLFORD, Circuit Judge, concurring. I concur in the court's judgment of affirmance despite my reservations concerning the involvement of the district judge in discussion with counsel and ambiguous indications about the propriety of a fifty-one month term at a "status conference."[1]   Markin's fraud clearly exceeded the $1,000,000 figure with little or no indication of remorse; the sentence imposed was fully justified.

It seems clear that the district judge in fact did consider objections made to the presentence report, but connected with the bank fraud in this case was also extensive bankruptcy fraud as well. Markin's counsel, in any event, had the opportunity to examine the pertinent documents with respect to any effectual challenge to a lengthy affidavit and a thorough presentence report concerning defendant's admitted fraudulent conduct.[2]

---

[1] The government concedes in its brief (p. 4) that by the end of the session "counsel for Markin was attempting to negotiate a sentence directly with the district court." The judge simply should have made it plain that no such effort was appropriate.

[2] The district court, indeed, advised Markin's counsel "certainly you have the right under the Rules to subpoena what you can't get voluntarily." (J/A at 99.)

amount of loss attributable to Ms. Markin during the period that she provided false information to the bank was less than $1 million. If he could make such a showing, the defendant would be entitled to a four-level reduction in the guideline range. The court recognized that defense counsel's real concern boiled down to "how much time does my client do?"

The judge asked the government for a sentencing recommendation. Assistant United States Attorney Williams responded that he believed the probation officer's calculations were correct. However, because the defendant had pled guilty early in the process and the government had thereby avoided a burdensome trial, he stated, "I think she is entitled to every benefit at the lower end of the guideline, which, according to the [probation officer's] calculation, would be a 51-month sentence." Williams added, "I believe that somewhere in the neighborhood of four years is an appropriate sentence, give or take, somewhere in that range." The district court consulted with the probation officer, asking if she was "hard and fast" on her recommendation of 60 months. The probation officer responded, "As I stated in the justification, it was a serious offense. She committed an offense over a long period of time. . . . I went toward the center of the guideline range at that point. Of course, I would not be upset if it went down to 51."

After some more discussion, the following exchange occurred:

MR. SHERMAN [defense counsel]: You know, I am willing to talk and work out something along the four-year line. I am willing to talk about that. I think that there are legitimate arguments to knock it down below the $10 million range which would bring it down to 46 to 57 months. He [Williams] is talking four years, 48 months. We can talk about something like that, but I think that's something we can live with, knowing that I am giving up what I believe to be a strong legal issue.

THE COURT:  Well, the concern that I have is—I think that the report would have to be altered to reflect a lower amount before I would be willing to depart.

The court then adjourned the conference to allow the probation officer to make some further calculations to determine the possibility of modifying the presentence investigation report.

When the status conference was reconvened that afternoon, the probation officer verified that after rechecking her figures, she had concluded that the loss caused by the fraud would exceed the $1 million threshold, and therefore she could not recommend the four-level reduction.  Defense counsel resumed his sentencing inquiries from the morning's conference.

MR. SHERMAN:  Well, can I pick up where we left off?  This morning we left off at 51 months.  That's what we were talking about this morning; am I right?

THE COURT:  Well, that was part of the discussion.

MR. SHERMAN:  That's where I would like to start.

MR. WILLIAMS:  That's where I would like to end, Your Honor.

THE COURT:  Okay.

MR. SHERMAN:  Well, you said 48.  Rather than going through all this, my question is, if I were to withdraw the objections and move for a downward departure on the basis of her husband's illness, present that to you and the government were still agreeing to 51 months or at least as a starting point, where would that leave me?

THE COURT:  Well, I don't know.  You certainly may make that argument, but I don't know that I can sign on to that at this point.  You are saying that it is a medical argument?

range, and unless the presentence report was modified, the sentence would fall within the range from 51 to 63 months.

While we are troubled by the district court's presence during sentencing negotiations by the parties, we do not believe the district court committed reversible error.  Prior to today, there was no clear rule in this Circuit prohibiting the district court from participating in negotiations regarding sentencing once a guilty plea had been entered.  Furthermore, we believe that the transcript of the entire status conference, including the district court's consistent refusal to commit to a sentence and the lack of any agreement between the parties belies the contention that any kind of agreement was reached during the status conference.  On balance, the discussions, even those relating to specific sentencing terms, related to the materiality of the defendant's objections and the procedures necessary to ensure that the defendant's material objections were fully considered.  There is, therefore, no error in this case.  However, in the future, we advise the district courts to avoid involvement in the kind of sentencing discussions that occurred here and which engendered this serious controversy over the propriety of the sentencing procedures.

## CONCLUSION

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.

982 F.2d at 194 (quoting *United States ex rel. Elksnis v. Gilligan*, 256 F.Supp. 244, 254 (S.D.N.Y. 1966)). It is the discretion to impose either a lenient or lengthy sentence that lies at the heart of the coercive potential inherent when a judge participates in plea negotiations. *See id.* at 195. In our view, this rationale applies with equal force whether the judge is negotiating an agreement to plead guilty or an agreement to waive objections to the presentence report in return for consideration at sentencing.

In this case, the parties appeared before the district court to discuss the defendant's objections to the presentence investigation report and her motion to compel production of the evidence supporting the report's calculation of loss. When a defendant objects to the presentence investigation report, the parties "shall be given an adequate opportunity to present information to the court regarding [the disputed] factor." U.S.S.G. §6A1.3(a). To resolve the dispute, the district court may find it necessary to hold an evidentiary hearing. *See* U.S. SENTENCING GUIDELINES MANUAL §6A1.3, cmt. background (1998). In this case, the district court held a status conference to determine the scope of the defendant's objections, as well as the need for an evidentiary hearing and/or additional document discovery. This type of discussion is entirely proper; indeed, it is necessary to a fair sentencing determination. *See id.*

In the course of these proper discussions, however, defense counsel began to inquire about possible sentences under various scenarios, and the focus of the conference was diverted from the defendant's objections to the report to matters that are perilously close to improper sentencing negotiations with the district court. However, after carefully reviewing the entire record, we conclude that while the parties were at times engaged in negotiations, the district court's participation was limited to inquiring about the scope of the defendant's objections and their materiality to the conclusions reached in the presentence report. When pressed for a sentencing commitment, the district court consistently responded that he would be sentencing within the guideline

MR. SHERMAN: No. I am not asking you to accept my motion for downward departure. But initially, the way we sort of ended up is that you were talking about 51 months as a potential disposition if the government agreed?

THE COURT: That was a possibility.

MR. SHERMAN: Yeah. That was the lowest. I am saying if I withdraw my objections, would that still be a possibility? And then I would move—I have two other issues. I have the issue of there is a female federal institution in Phoenix, ten miles from where she is living. I know that recommendation would not be binding.

THE COURT: Terry, I will tell you that will not be a problem. On a regular basis, unless it is something that doesn't make any sense, I will recommend that.

MR. SHERMAN: And then the other issue is, if I could? I have got the medical reports here. She is right now the sole caretaker of her husband. When would sentencing be? Could we delay sentencing until late August?

THE COURT: I want sentencing to be probably before that, but the enforcement of the sentence can be later.

MR. SHERMAN: Can be later?

THE COURT: Can be later if you have got any kind of medical or other kind of family situation, I will certainly consider that, probably favorably, but I don't feel—I want you to know that I don't feel that I can in any way depart in this case to get to that number.

MR. SHERMAN: 48?

THE COURT: Right. The only way it would happen is if Ms. Harris and the Probation Office were to alter, amend or supplement the report that they have, that the numbers that were presented in the report are not correct

or consider it under a different light. In other words, some basis for changing the numbers, and you know, I don't see that happening.

* * *

MR. WILLIAMS: I guess I am a little bit confused at this point. Are you withdrawing the objections?

MR. SHERMAN: I can't do it right now. What I would like to do is have an opportunity to talk in detail with my client and then advise the Court whether or not we will withdraw our objections. If not, then I will tell you what we need to go forward.

In the final discussions of the afternoon, the district court indicated that if the defendant's objections were not withdrawn, it would be inclined to require the bank to provide the financial information requested by the defendant.

In the following days, the defendant withdrew her objections, and proceeded to sentencing. A sentencing hearing was held on July 15, 1999. At that time, the defendant confirmed she had withdrawn her objections, and arguments were made relating to the proper length of the sentence. Defendant's counsel argued that the defendant was sorry for committing the offense and that a downward departure was warranted because of her husband's ill health; he also stated that the government was recommending a 51-month sentence. The government rejected the characterization that its earlier discussion of a 51-month sentence was a sentencing recommendation and argued against any downward departure. A representative of the bank also made a statement as the victim of the crime. The district court considered the arguments and imposed a sentence of 60 months.

## I. *Jurisdiction*

Ms. Markin filed a notice of appeal in this Court on August 3, 2000. Even though the defendant was sentenced on

prohibitions of Rule 11(e) do not apply once "the parties ha[ve] concluded their agreement, and the prosecutor ha[s] laid it out in open court," even if the agreement is not formal and binding. In other words, once the parties have "hammered out" the details of their agreement, Rule 11(e) does not prevent the sentencing judge from questioning the defendant regarding the terms, consequences, and acceptance of the plea agreement or from providing the defendant with information relating to these matters.

* * *

The record reveals that the defendant entered into a plea agreement and changed his plea to guilty well before his problematic interchange with the district court judge. Thus, the district court judge did not inappropriately involve himself in the plea discussions in violation of Rule 11(e).

*Id.* at 1269 (brackets in original) (citations omitted).

Arguably, under these authorities, the district court's comments at the status conference would not run afoul of Rule 11(e). We are nonetheless troubled by a district court's participation in sentencing discussions in which a criminal defendant offers to waive a legal argument in return for consideration in sentencing. As we noted in *United States v. Barrett*, the reason for Rule 11 flows from the fact that a judge's participation in plea negotiation is inherently coercive:

The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentencing in excess of that proposed is present whether referred to or not.

relied on this commentary to conclude that once a plea agreement has been signed by the government and the defendant and is disclosed to the court, the district court is properly expected to take an active role in evaluating the plea agreement. *See United States v. Crowell,* 60 F.3d 199, 204 (5th Cir. 1996) ("We have no doubt that this evaluation may include a consideration of the punishment allowable under the agreement, as compared to punishment appropriate for the defendant's conduct as a whole. Therefore, any such comments made during a discussion of the effects of a plea agreement properly presented to the court do not constitute improper participation in violation of Rule 11.").

In a more recent case, the Fifth Circuit considered the government's argument "that the judge's comments did not violate Rule 11 because they were made in open court after a plea agreement had been reached." *United States v. Rodriguez*, 197 F.3d 156, 159 (5th Cir. 1999). The court rejected the argument because it was "factually incorrect," *i.e.*, the defendant had not yet accepted the plea agreement, and noted that a 1993 opinion of that circuit, *United States v. Miles*, 10 F.3d 1135 (5th Cir. 1993), "rejected the notion that a judge has a free hand to participate in plea negotiations once a *proposed* agreement has been disclosed in open court." *Rodriguez,* 197 F.3d at 159-60 (emphasis added).

The Tenth Circuit has also considered the question of post-agreement discussions with the Court. *See United States v. Carver*, 160 F.3d 1266, 1268-69 (10th Cir. 1998). In that case, the defendant pled guilty and the district court entered the plea as a conditional guilty plea. The defendant appeared for sentencing and made contradictory statements about whether he wished to go forward on the sentencing under the plea agreement. The district court asked a number of questions, the propriety of which were challenged on appeal. The Court of Appeals commented:

> While it is true that Rule 11(e) prevents a judge from
> shaping the terms of a plea bargain or pressuring a
> criminal defendant to settle his case, these stringent

July 15, 1999, the judgment was not entered on the district court docket sheet until July 26, 1999. In a separate order, we confirmed that the defendant's notice of appeal was timely, and therefore we have appellate jurisdiction. *See United States v. Markin*, No. 99-3977 (6th Cir. Feb. 16, 2000) (order allowing appeal to go forward).

However, the government argues that we do not have jurisdiction over this case because Markin's appeal does not fall within the four statutory bases for appealing a sentence. *See* 18 U.S.C. §3742(a). Section 3742 allows a defendant to appeal the sentence imposed if the sentence (1) was imposed in violation of law; (2) was imposed as a result of an incorrect application of the guidelines, (3) is greater than the sentence specified in the applicable guideline range, or (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable. We have held that the Court of Appeals does not have jurisdiction over a valid sentence that has been imposed within the applicable Sentencing Guideline Range. *See United States v. Lively*, 20 F.3d 193, 199 (6th Cir. 1994).

It is clear that Ms. Markin does not challenge the validity of her sentence under the sentencing guidelines. Rather, she claims that the negotiations at the status conference resulted in an agreement with the government that the government breached. We view this as a claim that the sentence was imposed in violation of law, and we therefore have jurisdiction over this appeal.

## II.    *Santobello v. New York*

Markin argues that she was improperly induced to withdraw her objections to the presentence investigation report by the government's promise to recommend a 51-month sentence. She argues that because she gave up substantial rights in reliance on the government's promise, the rationale of *Santobello v. New York*, 404 U.S. 257 (1971) can be properly extended to enforce the government's purported agreement to recommend that she would be sentenced to 51 months in prison. We do not need to reach the question of whether the

rationale of *Santobello* can be extended to this situation, however, because we do not believe that an agreement was ever reached between the defendant and the government as to sentencing.

Our review of the record shows that defense counsel proposed a deal at the status conference in which he would withdraw the defendant's objections to the presentence investigation report and the government would recommend a sentence of 51 months, which is at the low end of the applicable guideline range. However, when AUSA Williams asked if the defendant was actually withdrawing the objections, defense counsel indicated that he could not do that "right now." While the AUSA participated in the negotiations that took place during the status conference, there is no evidence in the record that the government agreed to any deal regarding sentencing. Without such an agreement, the defendant has no remedy under the reasoning of *Santobello*.

## III. *Fed. R. Crim. Pro. 11*

The defendant also argues that the June 2nd status conference violated Fed. R. Crim. Pro. 11(e). A claim of improper judicial participation in plea negotiations is cognizable on appeal even if—as here—it was not previously raised in the district court. *See United States v. Sammons,* 918 F.2d 592, 601 (6th Cir. 1990). We will therefore consider whether the district court's participation in the status conference was an improper participation in sentencing negotiations in violation of Fed. R. Crim. P. 11(e). We review this claim for plain error. *See Sammons*, 918 F.2d at 601.

Rule 11(e) provides, in pertinent part:

(1)  In General. The attorney for the government and the attorney for the defendant—or the defendant when acting pro se—may agree that, upon the defendant's entering a plea of guilty or nolo contendere to a

charged offense, or to a lesser or related offense, the attorney for the government will:
   (A)  move to dismiss other charges; or
   (B)  recommend, or agree not to oppose the defendant's request for a particular sentence or sentencing range, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor is or is not applicable to the case. Any such recommendation or request is not binding on the court; or
   (C)  agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement or sentencing factor is or is not applicable to the case. Such a plea agreement is binding on the court once it is accepted by the court.
The court shall not participate in any discussions between the parties concerning any such plea agreement.

Fed. R. Crim. P. 11(e).

Markin's guilty plea had been entered and accepted by the district court before the status conferences occurred. Had the plea not yet been entered, the district court's participation in the plea discussions at the status conference clearly would have violated Rule 11(e). *See United States v. Barrett*, 982 F.2d 193 (6th Cir. 1992). However, once the defendant pleads guilty, the extent to which the district court may participate in discussions regarding sentencing is unsettled in this Circuit.

The advisory notes to Rule 11 explain that "the judge should not participate in plea discussions leading to a plea agreement. It is contemplated that the judge may participate in such discussions as may occur when the plea agreement is disclosed in open court." Fed. R. Crim. P. 11(e)(1) advisory committee's note (1974 Amendments). The Fifth Circuit