**UNITED STATES of America, Plaintiff–Appellee/Cross–Appellant,**

v.

**Louis Arzell GULLEY, Defendant–Appellant/Cross–Appellee.**

**Nos. 01–1773, 01–1973.**

United States Court of Appeals, Sixth Circuit.

Feb. 27, 2003.

Before GUY and MOORE, Circuit Judges; and BECKWITH, District Judge.*

PER CURIAM.

Defendant, Louis Arzell Gulley, pleaded guilty after jury selection had begun to one count of bank robbery in violation of 18 U.S.C. § 2113(a). Defendant claims the district court abused its discretion in denying his motion for appointment of a fourth attorney, denying his request for a continuance so he could prepare to represent

* The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation.

himself, and denying his motion to withdraw his guilty plea before sentencing. The government appeals from the district court's decision to reduce defendant's offense level by a third point for timely acceptance of responsibility under United States Sentencing Guidelines Manual (USSG) § 3E1.1(b) (2000).

After review of the record and the arguments presented on appeal, we affirm defendant's conviction, vacate defendant's sentence, and remand for the limited purpose of resentencing defendant pursuant to the Rule 11 agreement without the additional one-point reduction under USSG § 3E1.1(b).

## I.

Defendant pleaded guilty to having robbed a National City Bank located in Lincoln Park, Michigan, on December 2, 1999. Defendant gave a teller a note demanding money that indicated he had a bomb. He also showed the teller a brown paper bag he was carrying. The teller put $1,948.00 in a manila envelope and gave it to defendant. On December 15, 1999, defendant went into another National City branch that was located about a mile away from the first robbery. His suspicious behavior caused a teller to call the police. Defendant left the bank and was approached by the police at a nearby convenience store a short time later.

An officer asked to see the piece of paper in defendant's hand, on which there was a map of the area, the addresses of four National City branches, and the telephone numbers for the bus and a taxi company. The officer asked to see what was in defendant's duffle bag, and he agreed. In it, there was a cellular telephone, a brown paper bag, and clothes that fit the description of those worn by the robber on December 2. Police also found several bank robbery demand notes sticking out of the front pocket of defendant's coveralls. Calling in to dispatch, the police learned defendant was on parole and that possession of a cellular telephone violated the conditions of that parole. Defendant was taken into custody for a parole violation, and was identified in a lineup by a victim of the robbery.[1]

Defendant was indicted on one count of bank robbery on February 15, 2000, and the Federal Defender's Office was appointed to represent him. Defendant's first attorney filed motions in March 2000, seeking to suppress evidence found during the search of defendant's person and challenging the identification as the product of an illegal detention. On May 4, 2000, before the suppression motions were heard, defendant reported conflicts and a lack of communication with his attorney. A second appointed counsel was appointed to represent defendant.

On September 14, 2000, the newest date set for hearing on the suppression motions, defendant asked for another attorney. The record reflects that defendant had wanted counsel to challenge the lineup as unconstitutionally suggestive and, during their discussions of the issue, the attorney swore at defendant for impugning his professional integrity.

Defendant was allowed a third attorney at that time, but the district court specifically warned defendant that it would be his last appointed counsel. The court cautioned defendant to either get along with his third attorney, or he would have to represent himself.

**1.** Defendant had prior state convictions for possession with intent to distribute cocaine and for possessing a weapon in prison. He was paroled on both convictions on October 28, 1999.

When defendant appeared on October 23, 2000, for the hearing on the pending motions to suppress, he reported that he was not getting along with his third attorney. Their disagreement related again to defendant's desire to challenge the suggestiveness of the lineup. The district court denied the request for a new attorney and confirmed that defendant did not want to represent himself. The court offered to let defendant ask questions and agreed to leave the record open for further argument or evidence. Testimony was taken from several witnesses and supplemental briefing was allowed.

When further arguments concerning the motions to suppress were heard on November 30, 2000, the court also asked about defendant's continued desire to challenge the lineup itself. Defense counsel indicated that he had obtained a photograph of the lineup, but asked for additional time to consult with defendant before formally raising the issue. The photograph was marked as an exhibit and shown to the court. The record reflects that although a supplemental brief was filed on the legality of the arrest, defense counsel did not challenge the suggestiveness of the lineup. The motions to suppress were denied in January 2001, and trial was scheduled to commence on February 20, 2001. Defendant was advised of this in January 2001.

Due to scheduling conflicts, the case was reassigned to another district judge for trial to commence on February 22, 2001. Defendant claimed he was not aware that he was being brought to court for trial on the bank robbery charge, but thought he was being transported to state court for other proceedings. Defense counsel stated that he had attempted to visit the defendant to discuss the trial and the government's outstanding plea offer, but defendant would not come out of his cell to see him. Defendant insisted that he wanted a new attorney to be appointed because his attorney had not filed a supplemental motion concerning the suggestiveness of the lineup. Counsel responded that, in his judgment, there was no viable claim that the lineup had been tainted.

In a lengthy colloquy, the district court explained defendant's right to represent himself, as well as the dangers of doing so, and gave defendant the choice of proceeding with his current counsel or representing himself. Defendant chose to represent himself, the court found his decision was knowing and voluntary, and defense counsel was allowed to withdraw.

Defendant then asked to be allowed time to study the rules of evidence and procedures. Defendant was allowed two or three hours in the law library to prepare, but insisted when they reconvened that he was not ready to proceed and needed a couple of weeks to "learn the system." The district court denied defendant's request for adjournment after considering the following relevant factors:

One is the length of delay. And there has been a very lengthy delay because you've asked for new attorneys. Two, because—the right you are asserting. And you are asserting a very important right, and that is the right to counsel. And I'm taking that into consideration. And I'm making a finding that your right to counsel has been protected because Mr. Daniel is available to represent you, and your grounds for dismissing Mr. Daniel are not meritorious. And that is that he would not raise an issue that he felt in his professional judgment was not meritorious.

In terms of the continuance that you're asking for, it would cause prejudice to the Government because you're asking for it at the day of trial and the Government has their witnesses here

and the Court has the jurors here. And that, therefore, I'm exercising my discretion in denying you your request for a continuance.

When pressed to make a choice about his representation, defendant refused either to accept representation from his last appointed counsel or to proceed on his own behalf. As a result, the district court reappointed defendant's third attorney.[2]

After jury selection was well underway, defendant asked for an opportunity to review the Rule 11 plea agreement offered by the government. The government indicated that it was willing to extend the plea offer, except that it would not stipulate to the reduction of the offense level by a third point for timely acceptance of responsibility. The court explained: the differences between a straight plea of guilty and a plea under the Rule 11 agreement; the applicable guideline ranges depending on whether the court decided to award the third point for timely acceptance of responsibility; and the effect of the government's agreement to cap the sentence at the midpoint of the applicable guideline range. Defendant signed the Rule 11 agreement and entered a plea of guilty.

Almost a month later, defendant contacted his attorney and wrote to the district court asking to withdraw his guilty plea. At a hearing on April 24, 2001, defendant explained that he wanted to withdraw his plea because his attorney had promised during a pretrial meeting that his sentence would be 57 to 70 months. The district court accepted defendant's claim that he was told this, but found defendant had been fully advised at the time the plea was taken concerning the applicable sentencing guideline ranges. The court also noted that defendant had denied that any other promises had been made to him at the time the guilty plea was entered. The district court found the plea was knowing and voluntary and denied the motion to withdraw the plea.

At sentencing, over the government's objection, the district court granted defendant a third-point reduction in his offense level for acceptance of responsibility under USSG § 3E1.1(b). The guideline range, with the third-point reduction, was 70 to 87 months' imprisonment and the plea agreement provided that his sentence could not exceed the midpoint of that range. Defendant was sentenced to a total of 70 months' imprisonment, to be followed by a term of supervised release. These appeals followed.[3]

## II.

### A. New Counsel

When an indigent defendant "makes a timely and good faith motion requesting that appointed counsel be discharged and new counsel be appointed, the trial court clearly has a responsibility to determine the reasons for defendant's dissatisfaction with his current counsel." *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir.1990) (citation and internal quotation marks omitted). At the same time, there is no right to have appointed counsel of one's choice and therefore an indigent defendant must demonstrate good cause to warrant

---

**2.** There is reference to the fact that defendant had come to court in a jail uniform because he claimed he did not know the federal trial was to be held that day. Before the jury came in, however, defendant was offered the opportunity to change into civilian clothes. He refused and tried to walk out of the courtroom.

**3.** Without the additional point reduction under § 3E1.1(b), the guideline range would have been 77 to 96 months and the sentence could not have exceeded the midpoint of 86 months.

substitution of counsel. *See United States v. Williams,* 176 F.3d 301, 304 (6th Cir. 1999); *United States v. Jennings,* 83 F.3d 145, 148 (6th Cir.1996).

We review the denial of a motion for substitution of appointed counsel for abuse of discretion, based on consideration of the following factors: the timeliness of the motion; the adequacy of the court's inquiry into defendant's complaints; and whether the conflict between attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense. *Iles,* 906 F.2d at 1130 n. 8. These factors must also be balanced against the public interest in "prompt and efficient administration of justice." *Id.* at 1131 (citation and internal quotation marks omitted).

■ While the basis for defendant's dissatisfaction was not new, defendant did not request new counsel between the November 2000 hearing and the February 2001 trial date. Defendant emphasizes that he did not know he was being taken to court for trial on the robbery charge, but admitted that he received notice that trial had been scheduled to begin only a few days earlier. Despite defendant's arrival in prison garb and without his legal papers, civilian clothes were made available to defendant and his legal papers were retrieved from his jail cell. Defendant's demonstrated inability to get along with appointed counsel had already resulted in considerable delay in the proceedings and suggested the distinct possibility that he would not have a better relationship with a fourth appointed counsel. When the public interest is balanced against defendant's conflicts with his counsel over the issue of the suggestiveness of the lineup, we find the district court did not abuse its discretion by leaving defendant with the choice of proceeding with his current appointed counsel, or asserting his right to represent himself.

B. Continuance

■ Claiming an abuse of discretion in the denial of defendant's request for a two-week continuance, defendant argues that it effectively denied him his right to represent himself at trial. The record makes clear that defendant was permitted to assert his right to self-representation and dismiss his appointed counsel. When that move failed to result in further delay of the proceedings, however, defendant reverted to silence and refused to affirmatively assert his right to self-representation.

When the request for self-representation is merely a tactic to secure a delay in the proceedings, denial of a request for self-representation does not violate the Constitution. *See Robards v. Rees,* 789 F.2d 379, 383–84 (6th Cir.1986). Denial of a continuance does not rise to the level of a constitutional error unless there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay. *United States v. Crossley,* 224 F.3d 847, 854–55 (6th Cir.2000). We find the district court did not abuse its discretion by denying defendant a continuance so he could study the rules of evidence and criminal procedure, by finding defendant had not unequivocally waived his right to appointed counsel, or by reappointing counsel to represent defendant.

C. Withdrawal of Guilty Plea

We review the district court's denial of defendant's motion to withdraw a guilty plea for abuse of discretion. *United States v. Bashara,* 27 F.3d 1174, 1180 (6th Cir. 1994). Under Fed.R.Crim.P. 32(e), the court may permit a defendant to withdraw a plea prior to sentencing if he shows any "fair and just reason" for the withdrawal.

In determining whether the defendant has demonstrated a fair and just reason, the court considers the following factors: 1) the amount of time that elapsed between the plea and the motion to withdraw; 2) the presence of a valid reason for not moving to withdraw earlier; 3) whether the defendant has maintained his innocence; 4) the circumstances underlying the guilty plea; 5) defendant's background; 6) defendant's prior experience with the criminal justice system; and 7) the potential prejudice to the government if the motion is granted. *See Bashara*, 27 F.3d at 1181.

■ Defendant argues that he should have been permitted to withdraw his plea because he was promised a lesser sentence by his attorney during a pretrial meeting and because he was "forced" into the plea by the denial of his requests for new counsel or for a continuance to prepare to represent himself. It was nearly a month after the plea that defendant notified his attorney of his desire to withdraw his guilty plea, and no reason was offered for his failure to raise the issue earlier. Nor did defendant maintain that he was innocent of the bank robbery charge. It is also apparent that defendant was not without experience with the criminal justice system.

The district court accepted defendant's allegation concerning the promise, but properly found that such a promise was superceded by both the discussions at the time the plea was taken regarding the applicable sentencing ranges and the defendant's indication that no other promises had been made to him. Despite defendant's reluctance to enter a plea of guilty, it cannot be said that his plea was not made knowingly and intelligently under the circumstances. *Brady v. United States*, 397 U.S. 742, 749, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). *See also Henderson v. Morgan*, 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) (a plea may be involuntary if the defendant does not understand the nature of the constitutional right he is waiving or unintelligent if the defendant does not understand the charges against him).

Finally, defendant claims it was error for the district court not to hold an evidentiary hearing on the motion to withdraw his guilty plea. We do not agree. The district court gave defendant the benefit of the only factual dispute raised by his motion, whether counsel had promised he would get a sentence of 57 to 70 months, and was fully aware of the circumstances that defendant claimed had forced him to enter the guilty plea.

## D. Acceptance of Responsibility

■ The government does not challenge the two-level reduction for acceptance of responsibility awarded under USSG § 3E1.1(a). Rather, the government appeals only from the district court's decision to further reduce the offense level by a third point under USSG § 3E1.1(b), which applies:

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

(1) timely providing complete information to the government concerning his own involvement in the offense; or

(2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently[.]

The government's plea offer included an agreement that defendant would be entitled to the third-point reduction under § 3E1.1(b). By its terms, however, the plea offer expired on February 14, 2001. On February 22, the first day of trial, the court asked if the government's plea offer was still available to defendant. The government responded that it would make the offer available, except that it would not stipulate to the third-level reduction for acceptance of responsibility because defendant had provided neither information regarding his involvement, nor timely notice of his intention to enter a plea of guilty. The court accepted this limitation, and made clear that the issue would be decided by the court at the time of sentencing.

We are not persuaded by defendant's suggestion that the government should be bound by the terms of the written plea agreement containing the stipulation in the face of the uncontroverted modification of the offer on the record. The integration clause in this plea agreement stated that no other promises had been made by the government, but did not provide that the agreement could not be orally modified. This is not a case of an alleged oral promise that was not incorporated into the plea agreement. Nor is this a situation in which the court improperly modified the terms of a plea agreement. *Compare United States v. Skidmore*, 998 F.2d 372 (6th Cir.1993). The record makes clear that the plea agreement was explicitly modified by agreement of the parties on the record before the plea of guilty was entered.

Although the initial presentence investigation report calculated the sentencing guideline range with a three-level reduction for acceptance of responsibility, the report was amended in response to the government's objection to recommend only the two-level reduction under § 3E1.1(a).

The district court rejected the probation department's recommendation at sentencing without articulating the basis for that decision.

A district court's determination regarding a defendant's acceptance of responsibility is entitled to deference and the factual findings are reviewed for clear error. *See United States v. Smith*, 245 F.3d 538, 546 (6th Cir.2001) (quoting *United States v. Tilford*, 224 F.3d 865, 867 (6th Cir. 2000)). Our review is *de novo* when the only issue presented is the propriety of the application of the reduction to uncontested facts. *Id.*

Defendant has put forward several rationales in an attempt to justify the court's decision to award him the third-point reduction in his offense level. In particular, defendant relies on (1) his claim that he was not aware trial would commence on February 22 since the trial had been set for two days earlier and he received no notice of the adjournment, and (2) the fact that he had not reviewed the plea agreement until the first day of trial because of the breakdown in the attorney-client relationship. The guidelines make clear, however, that the timeliness of the defendant's notice is measured not from the defendant's perspective, but, rather, by whether the notice was given in time for the government to avoid preparing for trial and for the court to efficiently allocate its resources.

In this case, the government not only prepared for trial, but jury selection was well underway before defendant decided he would look at the plea offer. While this was defendant's prerogative, he is not entitled to the third-point reduction of the offense level under § 3E1.1(b)(2). Cases interpreting this section, although mostly involving a defendant's appeal from the denial of the adjustment, make clear that notice is not timely when it is given on the eve of trial. *See, e.g., Smith*, 245 F.3d at

546–47 (eve of trial); *Bashara*, 27 F.3d at 1184 (no error in denial of reduction when defendant waited until five days before trial to give notice). *See also United States v. Khang*, 36 F.3d 77, 80 (9th Cir. 1994) (reversing award because defendant did not plead guilty until the night before trial). Accordingly, we find the court erred in its application of § 3E1.1(b)(2) by awarding defendant a third-point reduction in the offense level.

Finally, defendant argues that the additional point may have been awarded because of the district court's statement that it would consider a guilty plea timely if it was entered "before the jury came down." This statement was made the morning of trial, before the prospective jurors had been called down for jury selection. To the extent that defendant claims he relied on this statement as promising he would receive the third-point reduction, that claim is both contradicted by the court's explanation that the issue would be decided at sentencing and undermined by the fact that defendant did not ask for time to consider the plea offer until after the prospective jurors had been "called down" and jury selection was underway. Nor can the court's statement be fairly characterized as improper court participation in plea discussions between the parties. *See United States v. Markin*, 263 F.3d 491, 496 (6th Cir.2001) (participation in plea discussions at a status conference would clearly violate Rule 11(e)).

For the reasons set forth above, we AFFIRM defendant's conviction, VACATE defendant's sentence, and REMAND for the limited purpose of resentencing defendant pursuant to the Rule 11 agreement without the additional one-point reduction under USSG § 3E1.1(b).