**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

MANUEL GONZALEZ-MELCHOR,
            *Defendant-Appellant.*

No. 10-50111

D.C. No.
3:09-cr-03326-
LAB-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted
April 13, 2011—Pasadena, California

Filed July 8, 2011

Before: Dorothy W. Nelson, Senior Circuit Judge, and
Jay S. Bybee and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

9141

## COUNSEL

Kristi A. Hughes, Federal Public Defender, San Diego, California, Attorney for the defendant-appellant.

Laura E. Duffy, United States Attorney, Bruce R. Castetter, Assistant United States Attorney, and Rebecca S. Kanter, Assistant United States Attorney, San Diego, California, Attorneys for the plaintiff-appellee.

## OPINION

M. SMITH, Circuit Judge:

Defendant-Appellant Manuel Gonzalez-Melchor appeals his conviction and sixty-three-month sentence for reentry after deportation in violation of 8 U.S.C. § 1326. Gonzalez-Melchor contends that his deportation was invalid because the immigration judge (IJ) failed to advise him of his eligibility for voluntary departure. The government claims that we need not reach that question because Gonzalez-Melchor waived his right to appeal.

We hold that the appellate waiver, negotiated by the district court at sentencing in exchange for a reduced sentence, is invalid and unenforceable. In a memorandum disposition filed contemporaneously with this opinion, we hold that the IJ failed adequately to advise Gonzalez-Melchor of his ability to apply for voluntary departure, and we remand for the district court to determine whether Gonzalez-Melchor was prejudiced by that failure.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 27, 2009, United States Border Patrol agents, responding to a seismic intrusion device near Otay Mesa, California approximately one mile north of the United States-Mexico border, found Gonzalez-Melchor hiding in the brush. Gonzalez-Melchor, a citizen of Mexico, admitted to being in the United States without valid immigration documents. A routine records check revealed that Gonzalez-Melchor had previously been deported from the United States.

The relevant facts concerning the underlying deportation hearing are as follows: On September 8, 1995, Gonzalez-Melchor appeared before an IJ for a group deportation hearing. At that hearing, Gonzalez-Melchor admitted that he pre-

viously had crossed the border from Mexico six or seven times without inspection.

The IJ explained his ruling to the group as follows:

> [T]he only thing in the law that could possibly save you from deportation is voluntary departure. But I'm not considering you for that because I—I would not give it to you even if you asked for it and I want you to know the reasons. Voluntary departure is what the law calls a privilege. This means you cannot have it simply because you would like to [ ] get it. To receive it you would have to show two things. First that you qualify for it. Second, even if you do qualify, that you have a good record which shows you deserve the privilege.
>
> Now I note that in some of your cases, you have suffered within the past five years a conviction for a drug offense or in the case of one man, for burglary, and this criminal record disqualifies you from voluntary departure. For the rest of you, I see bad facts which tells me you don't deserve voluntary departure. For example, . . . [s]everal of you have entered the country without inspection on previous occasions . . . . I think the only fair and correct order for you is deportation to Mexico.

The IJ then explained that each respondent had a right to appeal the decision and asked each "to stand and tell me in a loud and clear voice, either yes or no, whether you have any interest at all in appeal." Gonzalez-Melchor answered, "No."

Four years later, on September 9, 2009, Gonzalez-Melchor was indicted for one count of illegal reentry after deportation in violation of 8 U.S.C. § 1326. He moved to dismiss the indictment, arguing that the illegal reentry charge was based on an invalid deportation because the IJ had failed to advise

him of his ability to apply for voluntary departure, or to give him the opportunity to develop a record to show his eligibility for such relief.

The district court concluded that the IJ had failed to advise Gonzalez-Melchor of his eligibility to apply for voluntary departure because "in explaining the right, [the IJ] makes a threshold announcement that he's also made the decision." The court denied Gonzalez-Melchor's motion to dismiss the indictment, however, concluding that Gonzalez-Melchor had validly waived his right to appeal to the district court, and had not demonstrated prejudice because the IJ likely would not have granted discretionary relief.

Gonzalez-Melchor waived his right to a jury trial and was convicted of one count of illegal reentry after deportation. At sentencing, the district court informed Gonzalez-Melchor that he intended to reduce his sentence by two points for acceptance of responsibility, and noted, "[I]f I was convinced [you] were going to stay out of the United States for good . . . then that would persuade me that a sentence of less than whatever we end up with once [you] get[ ] credit for responsibility might be appropriate." The following colloquy then ensued between the district court, Gonzalez-Melchor, and his counsel:

> **The Court**:  I'd also like to hear from [Gonzalez-Melchor,] "look, I had my day in court. My arguments were heard. I don't have a real good argument . . . ."
>
> And your experience is probably the same as mine. [The Ninth Circuit is] going to be reluctant to go the other way on that. So he can take his appeal, but it's a long-shot. That—grounding himself in some realism there con-

vinces me of the bona fideness [sic] of the promise that he's going to stay out. If I had that, then the sentence would be quite different than what it might be absent those things.

. . . .

[A]n acknowledgment from him that he's not coming back anymore, that he isn't, that he promises me or looks me in the eye man to man and says "I'm not coming back anymore, and I'll accept the judgments of this court. I'm not going to waste anybody else's time and money"—maybe I shouldn't say, "waste," but "I'm not going to expend additional resources to pursue this thing. I'll accept my fate," that would go a long way. He'd probably be somewhere in the range of 60, 65 months, something like that, which is a substantial reduction from where he is even once he gets two points off [for acceptance of responsibility].

**Counsel**:        Can I just have a minute to speak with Mr. Gonzalez?

**The Court**:        Sure.

**Counsel**:        Thank you.

(Pause in proceedings)

**Counsel**:          Thank you, your honor. He's ready to put this incident behind him and he'll waive appeal.

**The Court**:          All right. Mr. Gonzalez, your lawyer tells me that you're prepared to accept the judgment of this court and waive any right to pursue any appeals or challenges to rulings that I've made; is that true?

**Defendant**:          Yes, sir.

**The Court**:          And [your counsel] has explained to you the nature of your right in that regard. You could pursue it through the 9th Circuit and get a judgment from the three judges on a panel in the 9th Circuit and even go further. But if you waive your right to appeal, that would be an end of your case today. Do you understand?

**Defendant**:          Yes, sir.

**The Court**:          That's what you want to do?

**Defendant**:          Yes, sir.

**The Court**:          Does he make that decision with your concurrence?

**Counsel**:          Yes, your honor.

**The Court**:          You believe it's voluntary on his part?

**Counsel**:          I do, your honor.

**The Court**:       The court finds that Mr. Gonzalez
                     has knowingly, voluntarily, and
                     intelligently waived his right to
                     appeal. I accept that waiver.

The district court sentenced Gonzalez-Melchor to sixty-three months imprisonment, a "variance downward from the 84-month bottom end of the guidelines." Despite his putative appellate waiver, Gonzalez-Melchor now appeals.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. We review de novo whether an appellate waiver is valid. *United States v. Shimoda*, 334 F.3d 846, 848 (9th Cir. 2003).

## DISCUSSION

The government contends that we should dismiss the appeal because Gonzalez-Melchor waived his appellate rights. *See* 18 U.S.C. § 3742(a) (providing the statutory right for a defendant to appeal his or her sentence). Gonzalez-Melchor responds that the waiver is invalid and contends that Federal Rule of Criminal Procedure 11(c)(1), which prohibits judicial participation in plea negotiations, should also extend to appellate-waiver negotiations at the sentencing phase. We hold that the appellate waiver, negotiated by the district court in this case, is invalid and unenforceable.

Generally, we retain jurisdiction over an appeal by a defendant who has signed an appellate waiver, although " 'we will not exercise that jurisdiction to review the merits of [a defendant's] appeal if we conclude that she knowingly and voluntarily waived her right to appeal.' " *United States v. Jacobo Castillo*, 496 F.3d 947, 957 (9th Cir. 2007) (en banc) (quoting *United States v. Gwinnett*, 483 F.3d 200, 203 (3d Cir. 2007)

(alteration in original)). "A waiver is voluntary if, under the totality of the circumstances, [it] was the product of a free and deliberate choice rather than coercion or improper inducement." *United States v. Doe*, 155 F.3d 1070, 1074 (9th Cir. 1998) (en banc). However, "where a waiver is not the product of the defendant's free will—for example, where it has been procured by government coercion or intimidation—the defendant cannot be said to have knowingly and voluntarily relinquished his rights." *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999). Accordingly, we must determine whether the district court's participation in negotiations rendered Gonzalez-Melchor's appellate waiver involuntary.

**[1]** Federal Rule of Criminal Procedure 11(c)(1) provides, in relevant part: "An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions." Fed. R. Crim. P. 11(c)(1). The Federal Rules of Criminal Procedure thereby expressly prohibit judicial participation in plea-agreement negotiations, the setting in which appellate waivers typically occur. *See*, *e.g.*, *Jacobo Castillo*, 496 F.3d at 954 ("In general, a defendant who enters into a plea agreement waives his right to appeal his conviction."); *United States v. Portillo-Cano*, 192 F.3d 1246, 1249 (9th Cir. 1999) ("Upon entering into an enforceable [plea] agreement, [a defendant waives] his right to appeal a sentence called for by the agreement.") (citing 18 U.S.C. § 3742(c)). This is such a bright-line rule that "a finding of judicial misconduct in connection with a plea proceeding constitutes plain error and entitles a defendant to withdraw his guilty plea even if the error is identified for the first time on appeal." *United States v. Anderson*, 993 F.2d 1435, 1437 (9th Cir. 1993).

**[2]** We construe a plea agreement as a contract between the prosecutor and the defendant, *United States v. Streich*, 560 F.3d 926, 929-30 (9th Cir. 2009), with the district court acting only as "a neutral arbiter of the criminal prosecution," *United*

*States v. Bruce*, 976 F.2d 552, 557 (9th Cir. 1992). Accordingly, Rule 11(b)(1)(N) requires that, "[b]efore the court accepts a plea of guilty . . . the court must address the defendant personally in open court . . . [and] inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N). Where a district court improperly participates in plea-agreement negotiations, however, the defendant's "responses to the judge's questioning during the formalistic colloquy do not allay our concerns regarding voluntariness." *Anderson*, 993 F.2d at 1438.

The risk of coercion is especially high where a district court pressures a defendant for an immediate change of his or her plea. In *United States v. Anderson*, we noted:

> The judge's opening pronouncement that he would not after [the date of the hearing] accept a plea to fewer than all thirty counts of the indictment and admonishment that the government was not to "make any deals," aside from constituting improper judicial intervention in the plea negotiation process, . . . meant that Anderson had to decide immediately whether he wished to change the not guilty plea he had just entered to one of guilty . . . . [I]t is difficult to imagine how Anderson could not have felt pressured when confronted with the court's "now or never" tactics at the . . . hearing.

993 F.2d at 1437-38. Thus, the risk of coercion potentially is even higher when a defendant must immediately respond to the judge's intervention in plea negotiations.

Rule 11(c)(1), at least arguably, does not *expressly* apply in the context of this case because no plea-agreement discussions took place. *See, e.g.*, *Bruce*, 976 F.2d at 556 (stating that the rule "simply commands that the judge not participate in,

and remove him or herself from, any discussion of a plea agreement that has not yet been agreed to by the parties in open court"). We conclude, however, that a district court's direct negotiation of an appellate waiver during sentencing raises many of the same concerns as a district court's participation in plea negotiations.

**[3]** We have explained previously that judicial participation in plea negotiations is prohibited, first, because it "inevitably carries with it the high and unacceptable risk of coercing a defendant to accept the proposed agreement and plead guilty;" second, because it threatens the integrity of the judicial process; and finally, because it may affect the judge's impartiality after negotiations are completed. *Bruce*, 976 F.2d at 556-58. These same concerns arise when appellate waivers are at issue. First, judicial participation in appellate-waiver negotiations during sentencing carries with it a high risk of coercing a defendant to accept the waiver, raising questions about whether the waiver "was the product of a free and deliberate choice rather than coercion or improper inducement." *Doe*, 155 F.3d at 1074. "It is the discretion to impose either a lenient or lengthy sentence that lies at the heart of the coercive potential inherent when a judge participates in plea negotiations." *United States v. Markin*, 263 F.3d 491, 498 (6th Cir. 2001). That discretion makes a judge's active participation in appellate-waiver negotiations inherently coercive.

Second, " '[t]he unequal positions of the judge and the accused . . . raise a question of fundamental fairness' regardless of the degree or type of judicial involvement." *Bruce*, 976 F.2d at 557 (citation omitted) (alterations in original). Instead, "[t]he judge's role must be that of a neutral arbiter of the criminal prosecution: his involvement in the adversary process . . . is beyond and detracts from that judicial duty." *Id.* In the context of appellate waivers, that concern is exacerbated because such a waiver insulates the court's decision from review. Indeed, if district courts could directly negotiate valid appellate waivers, we would be entirely deprived of our

error-correcting and error-preventing functions. *See generally* Steven Shavell, *The Appeals Process as a Means of Error Correction*, 24 J. Legal Stud. 379, 425-26 (1995) (describing the functions and purposes of the appellate process as correcting error, harmonizing the law among trial courts, preventing error by inducing trial judges to make fewer errors or risk reversal, and lending legitimacy to the legal process).

Finally, allowing a district court to engage in appellate-waiver negotiations at sentencing threatens the judge's impartiality after negotiations are completed. In the context of plea-agreement negotiations, we have noted that judicial involvement compromises the judge's decision making because it " 'makes it difficult for a judge to objectively assess the voluntariness of the plea eventually entered by the defendant," and if plea discussions ultimately fail and the case proceeds to trial, the judge may view unfavorably the defendant's rejection of the proposed agreement. *Bruce*, 976 F.2d at 557-58 (citation omitted). Similarly, a judge who participates in appellate-waiver negotiations loses his or her ability to objectively assess the voluntariness of the waiver, and may view unfavorably a rejection of the waiver and take that rejection into account at sentencing.

In *United States v. Markin*, the Sixth Circuit reached a similar conclusion, holding that the rationales underlying Rule 11(c)(1) apply to judicial negotiation of a waiver in exchange for consideration at sentencing. 263 F.3d at 498. In *Markin*, the defendant contended that the district court had improperly negotiated with him at sentencing to waive objections to the presentence report. *Id.* at 493-94. Because the defendant's guilty plea had been entered and accepted before the disputed interaction occurred, the district court's participation did not *expressly* violate Rule 11(c)(1). *Id.* at 496. Nevertheless, the court concluded, "We are . . . troubled by a district court's participation in sentencing discussions in which a criminal defendant offers to waive a legal argument in return for consideration in sentencing." *Id.* at 497. The court continued:

> It is the discretion to impose either a lenient or lengthy sentence that lies at the heart of the coercive potential inherent when a judge participates in plea negotiations. In our view, this rationale applies with equal force whether the judge is negotiating an agreement to plead guilty or an agreement to waive objections to the presentence report in return for consideration at sentencing.

*Id.* at 498 (internal citation omitted). Reviewing the transcript, however, the *Markin* court found no reversible error because "the transcript of the entire status conference, including the district court's consistent refusal to commit to a sentence and the lack of any agreement between the parties belies the contention that any kind of agreement was reached during the status conference." *Id.*

Here, in contrast, an agreement clearly was reached. The district court initiated negotiations by telling Gonzalez-Melchor's counsel that an appeal to the Ninth Circuit would be "a long-shot" and he wanted to hear Gonzalez-Melchor say, " 'I'll accept the judgments of this court. I'm not going to waste anybody else's time and money.' " If Gonzalez-Melchor said those things, the court continued, he would receive a sentence "somewhere in the range of 60, 65 months," below the Sentencing Guidelines' recommended range. Gonzalez-Melchor responded by waiving his right to appeal, and the district court imposed a below-Guidelines sentence within the promised range.

**[4]** This unusual and potentially coercive situation—a waiver of appellate rights negotiated by the district court during sentencing—implicates the same concerns Rule 11(c)(1) seeks to remedy. The negotiation was potentially coercive because of " '[t]he unequal positions of the judge and the accused,' " *Bruce*, 976 F.2d at 557 (citation omitted), and that potential was especially high because Gonzalez-Melchor had to decide immediately whether to waive his appellate rights,

*see Anderson*, 993 F.2d at 1438. Moreover, because the district court directly negotiated the waiver, its inquiry into whether the waiver was voluntary does not allay our concerns. *See id.*

**[5]** Given the coercive potential in a district court's power to impose a lengthy or lenient sentence, we are "troubled by a district court's participation in sentencing discussions in which a criminal defendant offers to waive a legal argument in return for consideration in sentencing." *Markin*, 263 F.3d at 497. We hold that the appellate waiver, negotiated by the district court in exchange for a reduced sentence, is invalid and unenforceable.

**VACATED AND REMANDED.**